No. 11,175.

THOMAS C. BUTLER VS. LUCY WASHINGTON.

45  279
45  920
45  279
46  297

When a divorce *a vincula matrimonii* is sought by one of the parties to a marriage
that was celebrated in this State conformably to its laws, against the other
party who is an absentee, permanently residing beyond the territorial limits
thereof, a court of this State has ample jurisdiction and authority to decide the
issue, it involving a civil status; and that jurisdiction attracts to it authority
to bring such absentee into court by means of substituted service of citation
and subject him to the judgment therein pronounced.

APPEAL from the Twenty-second District Court, Parish of Ascension. *Duffel, J.*

*R. McCulloh* for Plaintiff and Appellant:

The only case of divorce in which constructive service of citation is permitted in
this State is that wherein the absentee spouse has committed an infamous
crime and fled from justice. 2 An. 563; 3 An. 101; 5 An. 674; 6 An. 648, 218; 9 An.
239; 29 An. 817; 30 An. 878; 37 An. 669; 38 An. 764; 35 An. 1184; 41 An. 657; 42 An. 357,
363; 95 U. S. 733; 98 U. S. 714; 99 U. S. 362; C. P., Arts. 3, 26 to 29; 9 An. 35; 40 An. 29.
Laws in relation to separation from bed and board and divorce must be strictly
construed. 13 An. 495.
The nullity of a judgment of divorce without citation is absolute and can not be
cured by admissions in pleadings or otherwise. 15 An. 342, 519; 38 An. 202.

*Edward N. Pugh*, for Defendant and Appellee, cited: 18 An. 64;
14 An. 869; 27 An. 315; 10 R. 217; 29 An. 347; Larombière, Vol. 5,
p. 46, Sec. 12; 22 An. 429; 23 An. 766; 30 An 1041; 116 U. S. 285;
43 An. 1148.

The opinion of the court was delivered by

WATKINS, J.   The object of this action is to have a judgment of
divorce *a vinculo matrimonii* declared an absolute nullity on the *sole*
ground that the court rendering the decree was without legal right or
warrant in law to appoint a curator *ad hoc* to represent the absentee
defendant, upon whom service of citation was made—the law not au-
thorizing the appointment of a curator *ad hoc* in such case.

The petition recites and the fact is that the plaintiff intermarried
with the defendant in the parish of Ascension on the 10th of May,
1872, and for many years thereafter they lived together as man and
wife.   That on the 18th of August, 1879 the defendant instituted
suit against him in that parish for a separation *a mensa et thoro*, upon

an allegation of ill treatment. That to the complaint the husband made answer *in personam*, and after a contradictory trial had, judgment was pronounced in favor of the plaintiff, and duly signed on the 12th of January, 1880, decreeing a separation as prayed for.

That on the 7th of September, 1882, she began proceedings for a divorce *a vinculo matrimonii*, supplementing her petition in the suit for separation just adverted to, in which she set forth the aforesaid judgment alleging that more than two years had elapsed without any reconciliation between the parties having taken place.

That she averred that she had been informed and believed that her husband was an absentee, and had permanently left the State, and, on that ground, she was entitled to have a curator *ad hoc* appointed to represent him, and contradictorily with whom proceedings could be taken.

That thereupon the court made an order appointing a curator *ad hoc* to defend the suit and stand in judgment; and the curator thus appointed filed an anwer, and, contradictorily with him, a judgment was rendered decreeing a final divorce betwen the spouses.

It is that judgment the plaintiff attacks as an absolute nullity *on the face of the proceedings* related, as having been rendered in a suit in which he had not been cited *personally;* and on the averment that substituted service upon a curator *ad hoc* was unavailing to bring him into court in such a suit.

To this petition the defendant excepted that it disclosed no cause of action; and, in the alternative, she set up pleas of one, two, three, four and five years' prescription; and, as a bar to the action, she urged an estoppel, based upon certain judicial proceedings that were taken by him against the present defendant, averring that by his acts and conduct thereon he fully reccgnized the validity and binding force of the judgment now attached, and can not for that reason be permitted to gainsay them in the instant case.

Upon an examination of the law and the jurisprudence applicable to the questions raised, the district judge sustained the exceptions and dismissed the suit and the plaintiff has appealed.

It must be confessed that there has been quite a contrariety of decision on the question of the effect of substituted service of citation and of its efficacy to bring absentee defendants into the courts of *other* States than that of the domicil of such defendants and subject them to their judgments; but in so far as said judgments apply to

proceedings *in rem* or *in personam*, generally speaking, the only test that need be applied is that furnished by the fourteenth amendment to the Constitution of the United States, as interpreted by Pennoyer vs. Neff, 95 U. S. 730, and as applied to the laws and jurisprudence of this State in Loughlin vs. Ice Company, 35 An. 1185, and in other and subsequent cases decided by this court.

In the case of Young vs. Upshur, 43 An. 362, this question was gone over again very thoroughly, and all applicable State decisions were examined and analyzed, and amongst the cases cited was Dupuy vs. Hunt, 2 An. 562, from which the following paragraph was extracted, viz.:

"If the absentee leaves his property without an administrator or agent; if it be attached at the suit of a creditor; or, *if an absentee becomes a necessary party to a suit between other parties lawfully in court, in furtherance of justice, the law authorizes a curator to be appointed to represent him. There is something on which the jurisdiction of the court is based, and the judgment rendered would be within the recognized and ordinary prerogatives of the judicial power.*"

We then proceeded to say:

"The principles stated in that case were substantially followed in many subsequent opinions, and notably in Peterson vs. McRae, 3 An. 101; Jelks vs. Smith, 5 An. 674; Ackley vs. Lyons, 6 An. 648; Ferguson vs. Thomas, 6 An. 218; Prindle vs. Williams, 9 An. 34, and Stephens vs. Graves, 9 An. 239; * * * O'Hara vs. Booth, 29 An. 817; Morris vs. Bienvenue, 30 An. 878, and Fly vs. Noble, 37 An. 669."

We further cite approvingly the cases of Heirs of McGehee vs. McGehee, 41 An. 657, and Duruty vs. Musachia, 42 An. 357, in all of which consistent principles are announced. In the more recent case of Robbins vs. Martin, 43 An. 488, a similar question arose and the previously cited cases were examined and approved, and our opinion concludes thus:

"If indeed a non-resident can not be brought into a court of this State in such a case, such a cause of complaint as that propounded by the plaintiff, though well grounded in our law, would be practically remediless."

The jurisprudence of this court thus formulated brings us to the conclusion that it consecrates two propositions of law which are applicable to this case and must control our decision of it, viz.: *first,*

that the appointment of a curator *ad hoc* is admissible in case an absentee is a necessary party to a pending suit and when such an appointment is a *sine qua non* to the furtherance of justice; *second,* when the action is jurisdictionally well grounded otherwise and the appointment of a curator *ad hoc* is necessary in order that such jurisdiction may be exercised, else the complainant would be remediless.

Recurring to the facts of this case, it will be observed that the plaintiff was cited *personally* to answer the suit of the defendant for a separation; that he appeared and answered, and judgment was thereon pronounced contradictorily with him; that suit was brought in the parish in which the marriage was celebrated and where the spouses subsequently resided; that after the lapse of two years the wife filed *in the original suit a supplemental petition* demanding a final divorce grounded on the judgment of separation previously rendered; that in the meanwhile the husband had departed from the jurisdiction of the court and was beyond the reach of the process of the court at the time the supplemental proceedings were inaugurated.

And if under such circumstances the recusant husband could not be brought into court through the medium of a curator *ad hoc,* then, as we said in the Robbins case, "such a cause of complaint as that propounded by the plaintiff, though well grounded in our law, would be practically remediless."

In our code *separation from bed and board and divorce* are treated of under one and the same title (R. C. C. 138, *et seq.*). and Article one thirty-nine (139) declares that "married persons may claim reciprocally a *divorce for the several causes enumerated in Article 138,* but, except in the cases where the husband or wife may have been sentenced to an infamous punishment, or convicted of adultery, *no divorce shall be granted unless judgment of separation from bed and board shall have been rendered between the parties, and one year shall have expired,*" etc. (italics ours), thus clearly evidencing the fact that such judgment of separation is merely a preparatory step to procuring a final divorce, *a vinculo matrimonii* for any other causes than those enumerated in the exception just quoted.

The two form parts and parcels of the same proceeding and suit, and the defendant husband being a *necessary* party to the second or supplementary proceeding for divorce, it would seem illogical as

well as inequitable to hold that substituted service is inefficacious to bring him into court, though an absentee, in the furtherance of justice and the acquired jurisdiction of the court over the defendant *personally*, *quoad* the original suit—the object aimed at being defeated if he could not be thus held amenable to the law of the State in which the contract of marriage was celebrated.

In the case of Savoii vs. Iguogoso, 7 La. 281, the old court having under consideration the foregoing cited articles of the code said:

" The meaning and tenor of the whole law, taken together, appears to us to be applicable to either species of divorce, as well that which goes no further than a separation from bed and board *in its primary effects*, as that which at once dissolves the bonds of matrimony. The former is as complete a separation of the parties to the matrimonial engagement as the latter, with the exception that no new marriage of either could be legally made."

The code declares that "*separation* is to be claimed, sued for and pronounced in a competent court of justice," etc. R. C. C. 140.

The " separation " therein referred to must of necessity include all kinds of judicial separation, and for any and every cause, unrestricted as it is.

The immediately following article reads thus:

" When the defendant is *absent* or incapable of acting from any cause an attorney shall be appointed to represent him, against whom, contradictorily, the suit shall be prosecuted." R. C. C. 141.

The language of this article appears to be equally as unrestricted as that of the preceding one, and there is just the same reason for its being equally applicable to all classes of separation suits.

The case of Lachand vs. His Wife, 10 An. 156, is an almost exactly parallel case to this one, and the court said of the question at issue in the instant case:

" The appointment of an attorney *ad hoc* to represent the absent spouse, *who has abandoned the matrimonial domicil* and left the State, being specially authorized by law in the *preliminary* proceedings for separation, which forms the basis of an ultimate decree of divorce when no reconciliation takes place, it is a reasonable inference that the same constructive citation was intended by the Legislature to be adopted in the final proceedings against the party who persists in such a violation of conjugal duty."

The case of Prindle vs. Williams, 9 An. 34, is cited and relied upon

by plaintiff's counsel as being diametrically opposed to Lachand vs. His Wife.

But, in our conception, the two are not necessarily in conflict, for the reason that the Prindle case was a suit for an absolute divorce *a virculo matirmonii* on the charge of adultery, and the court held, on a consideration of the precepts of the code, "that unless a party has some property or interest in the State, upon which the jurisdiction of the court is to operate, the appointment of a curator *ad hoc* to represent such party can not be legally made."

It is evident that the court treated the question raised as one of jurisdiction merely, thus presenting the identical question that was raised and decided in Pennoyer vs. Neff, whilst in Lachand's case it was presented and decided with reference exclusively to the laws of separation and divorce—considering them in respect to substituted service as being *sui generis*.

In the first place the case of Lachand vs. His Wife was recognized and approved in the recent case of Mack vs. Handy, 39 An. 491; and in so far as a mere question of jurisdiction *ratione materiæ* is concerned counsel has apparently overlooked the fact that the Constitution has given this court *unlimited authority* in "suits for divorce and separation from bed and board." Art. 81.

This precept was doubtless engrafted upon the organic law on the theory that divorce involves a delicate and important question of *status* rather than one of property right, over which it was thought best to give this court plenary power and jurisdiction.

For whilst marriage can not be treated in any other light than that of " a civil contract," yet the question of divorce from the bonds of matrimony involves, many times, very refined distinctions requiring the exercise of skill and care in their determination. And, as it is a recognized principle of public law "that every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory, as a consequence every State has the power to determine for itself the civil status and capacities of its inhabitants * * * but can not exercise jurisdiction over persons or property beyond its territorial limits." Pennoyer vs. Neff, p. 722. This case is jurisdictionally well grounded, because the object of the litigation is to determine the binding force of the marriage bond which was celebrated in this State conformably to our laws, and the courts of this State are fully vested with power to cite absentees

who will be affected by their decrees or those who are necessary parties thereto, to the end that their jurisdiction in the premises may be exercised and the question of status fixed and determined.

In such instances, the question of status occupies the same relation to the parties litigant as a property right would have in others, and jurisdiction vested in a court to decide it attracts to it jurisdiction over the parties interested, and jurisdiction thus acquired renders effective substituted service on an absentee.

Such a suit, affecting as it does "the personal status" of the parties, is stated to be an exception to the general rule that is announced in Pennoyer vs. Neff, for the court was careful to safeguard its views with this statement, viz.:

"To prevent any misapprehension of the views expressed in this opinion, it is proper to observe that we do not mean to assert by anything that we have said that a State may not authorize proceedings to determine the status of one of its citizens toward a non-resident. which would be binding within the State though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil status and capacities of its inhabitants involves *authority to prescribe the conditions on which proceedings* affecting them may be commenced and carried on with its authority. The State, for example, has the *absolute right* to prescribe the conditions upon which the marriage relation between its own citizens shall be creaated and the causes for which it may be dissolved. One of the parties guilty of acts for which by the law of the State a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant, and if application could not be made to the tribunals of the complainant's domicil in such case and proceedings be there instituted without personal service of process, or personal notice to the offending party, the injured citizen would be without redress." P. 730.

The case of Champon vs. Champon, 40 An. 28, presents a question of divorce obtained in a court of this State by a husband who had abandoned his wife in France, where the marriage took place, and was only personated therein by a curator *ad hoc*. The court in stating the facts of that case said that the parties were married in France, and that the husband abandoned his wife and came to this

country and joined his concubine here, who together subsequently resided in New Orleans. Some time afterward the deserted wife came to New York to live. Soon afterward the husband instituted suit against his wife, claiming a divorce on the ground of excesses, ill treatment and abandonment; and, alleging her absence from the State, he procured the appointment of a curator *ad hoc* to represent her. There was nothing in the record to show that any monthly summonses had been given the wife to return and abide in the matrimonial domicil. Thereupon the court said:

"We have no hesitation in concluding, *under this state of facts*, that the judgment was absolute nullity."

That conclusion was manifestly the correct and only one that the court could have arrived at legitimately. This state was not the domicil of the parties or the place of the marriage; and instead of the wife being guilty of abandonment of it, it was the husband who left her at the matrimonial domicil and consorted with a concubine here.

The court rested its decision distinctly upon the precepts of the codes in relation to *absentees* and the mode of bringing them into court, citing R. C. C. 56 and C. P. 116 as the only ones applicable.

But the instant case rests upon different facts altogether, and different precepts of the code are involved, to-wit, R. C. C. 140 and 141. The parties were married and domiciled in this State. The wife brought suit against the husband for a separation and cited him personally. He appeared and answered, and, contradictorily with him, that suit was tried and judgment rendered. The separation suit was grounded upon the husband's ill treatment of his wife. Thereafter, though judicially separated from his wife *a mensa et thoro*, the husband left the State permanently, and not the *matrimonial domicil*, for there was none after the judgment.

It was in the court thus seized of full jurisdiction to determine the status of a marriage that was contracted in this State and wherein the spouses had their domicil prior to their judicial separation that the absentee defendant was sought to be reached and subjected to judgment through the instrumentality of substituted service of citation; and for that purpose we think the District Court was clearly competent to make the appointment; and it is manifest that, on principle and authority, the judgment pronounced on such a citation, is of unquestioned validity, and that the district judge correctly so decided.

*Judgment affirmed.*