CHARLES KNAPP *et al. v.* SUPREME COMMANDERY, UNITED
ORDER OF THE GOLDEN CROSS OF THE WORLD *et al.*

(*Knoxville.* September Term, 1908.)

1. **CORPORATIONS.** Equity jurisdiction to define and determine
the extent and limitations of their powers.

Courts of equity have jurisdiction to define and determine the
extent and limitations of the powers of corporations, and to
declare contracts or other corporate action, made or threatened
by the corporation or its officers, in excess and violation of those
powers, invalid, and to restrain and prohibit the performance of
them. (*Post, pp.* 222, 223.)

Case cited and approved: Dodge v. Woolsey, 18 How., 331, 341,
15 L. Ed., 401.

2. **SAME.** Stockholders may sue where corporation refuses to do
so, when.

One or more stockholders of a corporation may maintain a suit
in behalf of themselves and all other stockholders against the
corporation and others participating in the unlawful action to
declare corporate action *ultra vires* and void and to enjoin its
consummation, where the complainant stockholders had first
demanded of the corporation that it bring the suit for the said
purpose, and said demand was refused. (*Post, pp.* 217, 220,
221, 223-225.)

3. **PROCESS.** Jurisdiction of nonresident by publication, where
resident codefendant is before the court, and their property is
impounded by injunction, when.

In a suit by minority certificate holders in a resident incorpor-
ated fraternal beneficiary association against it and a nonresi-
dent similar association to declare illegal and *ultra vires* an
attempted merger of the two associations, to enjoin the con-
summation of such merger, to restrain the disposition of the
assets of the resident association under such void contract,

Knapp v. Golden Cross.

and to require the return to the nonresident association of its assets illegally and wrongfully received by the resident association and its officers pursuant to such attempted merger contract, jurisdiction may be obtained of the nonresident association by substituted process and construction service by publication, where jurisdiction of the resident association has been obtained by personal service of process, appearance, and answer, and the jurisdiction of the subject-matter, as the property of the corporations, has been obtained by impoundment by injunction, by which the court acquires jurisdiction to determine the entire controversy. (*Post, pp.* 216, 217, 222-231, 232, 233, 239.)

Cases cited, distinguished, and approved: Paper Co. v. Shyer, 108 Tenn., 444; Pennoyer v. Neff, 95 U. S., 734; Haddock v. Haddock, 201 U. S., 562; Loaiza v. Superior Court, 85 Col., 11; Dunham v. Dunham, 162 Ill., 610; Butler v. Washington, 45 La. Ann., 281; Peaslee v. Peaslee, 147 Mass., 180; Amy v. Amy, 12 Utah, 286; State v. Duket, 90 Wis., 276; Reed v. Reed, 52 Mich., 123.

4. **CORPORATIONS.** Creatures of legislature, and powers must be express or necessarily implied.

Corporations are creatures of the legislature, and exist solely and alone by virtue of the act of incorporation. They can exercise no powers not expressly granted in their charters or the law, or necessarily implied from the powers expressly given. (*Post, p.* 231.)

5. **SAME.** Statutes granting corporate powers must be strictly construed.

All statutes under which corporate power is asserted must be construed in favor of the State from which the power emanated, and against the grant of power. (*Post, pp.* 231, 232.)

Cases cited and approved: Gas Co. v. Williamson, 9 Heisk., 326; Memphis v. Gas Co., 9 Heisk., 533; Deaderick v. Wilson, 8 Bax., 133; Elevator Co. v. Railroad, 85 Tenn., 703; Miller v. Insurance Co., 92 Tenn., 176; Davis v. Railroad, 131 Mass., 259.

**6. SAME.** Cannot consolidate without express power in charters or statutes.

Corporations have no general power to consolidate or merge with another corporation, unless the express power to do so is found in their charters or the statutes of the State which created them. (*Post, pp.* 232-234.)

**7. SAME.** Statute authorizing lease and disposition of corporate property and franchises embraces quasi public corporations, and not private corporations.

A statute (Acts 1887, ch. 198), authorizing corporations existing under the laws of this State to lease and dispose of their property and franchises to any corporation of this or any other State authorized to carry on the same general business, applies only to quasi public corporations, and does not embrace private corporations. (*Post, pp.* 234-236.)

Acts cited and construed: Acts 1887, ch. 198.

Case cited and approved: Coal Creek Co. v. Coal Co., 106 Tenn., 651.

**8. SAME.** Statute authorizing lease and disposition of corporate property upon approval of majority of stock does not apply to fraternal beneficiary associations.

A statute (Acts 1887, ch. 198) authorizing corporations to lease and dispose of their property, upon approval by a vote of a majority of "the stock" in a meeting of "the stockholders" held for that purpose after the prescribed notice, does not authorize a fraternal beneficiary association, having neither stock nor stockholders, but members, incorporated under Acts 1875, ch. 142 (Shannon's Code, sec. 2524), providing for the organization of such corporations for the general welfare of society, and not for individual profit, to consolidate with another similar association. (*Post, pp.* 236, 237.)

Code cited and construed: Sec. 2524 (S.); sec. 1983 (M. & V.).

Acts cited and construed: Acts 1875, ch. 142; Acts 1897, ch. 19; Acts 1901, ch. 113; Acts 1905, ch. 480.

Knapp v. Golden Cross.

9. **SAME.** Statute authorizing a lease and disposition of corporate property to another corporation does not authorize a consolidation or merger.

A statute (Acts 1887, ch. 198), authorizing the lease and disposition of the property of a corporation to a similar corporation, does not authorize a consolidation and union of a domestic corporation with a foreign corporation. A lease of the property of one corporation to another, to be operated by it, is an entirely different thing from a merger or union. (*Post, pp.* 237, 238.)

Acts cited and construed: Acts 1887, ch. 198.

10. **SAME.** An ultra vires merger contract cannot be supported as a lease or sale, when.

A contract, in form and substance, a merger of two fraternal beneficiary associations, by which one of them takes over and absorbs the other, admitting the absorbed association's members to full membership, without the medical examination required by the absorbing association's by-laws, though some of them were ineligible on account of age, securing to some of them certain rights contrary to the by-laws, is made without authority, and is *ultra vires* and void, and cannot be supported as a sale or lease of the merged association. (*Post, pp.* 238, 239.)

11. **SAME.** Objecting members of fraternal beneficiary association may sue to prevent an ultra vires merger, and to have an account of assets.

The objecting members of a fraternal beneficiary association, having applied to the corporation's officers to bring suit to set aside an *ultra vires* merger with another association, and being refused, can maintain a bill in chancery to have the merger declared void and to enjoin the corporation's officers and agents from doing any act in the furtherance thereof, and as incidental to such relief to have an account taken of the assets of the absorbed association which have come into the hands of the absorbing association, and have the same returned. (*Post, pp.* 216, 217, 220, 222-225, 239.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.—
JOSEPH W. SNEED, Chancellor.

JOUROLMON, WELCKER & SMITH, for complainants.

WEBB, MCCLUNG & BAKER and H. T. COOPER, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The complainant Charles Knapp and some two hundred others, members of and holders of benefit certificates in Supreme Commandery, United Order of the Golden Cross of the World, a fraternal beneficiary association, filed the bill in this cause, November 6, 1906, in the chancery court of Knox county, against that association, which for brevity will be called the "Golden Cross," a corporation created and organized under the laws of Tennessee, and having its chief office and domicile in Knox county, Tennessee, and the Supreme Council of the Home Circle, which for brevity will be called the "Home Circle," also a fraternal beneficiary association created and organized under the laws of the commonwealth of Massachusetts, and having its chief office

and domicile in that State, for the purpose of having a merger and union of the two corporations, which was then being attempted to be made by the executive officers and committees of the same, declared and decreed unauthorized by the charter of the Golden Cross and the laws of Tennessee, *ultra vires,* and void, to enjoin the Golden Cross and its officers from consummating and executing it, and to have all proper accounts stated and decrees pronounced necessary to place the two corporations in the condition and *status* in which they were before the attempted union and merger.

The defendant Golden Cross was served with process and made defense by answer. The Home Circle was served with constructive process by publication, as provided by the statutes of this State in suits brought against nonresidents, and, failing to make defense within the time required by the practice of the court, an order *pro confesso* was duly taken and entered against it. The chancellor, upon a hearing upon the pleadings, the order *pro confesso* entered against the Home Circle, and the proof offered by complainants and the Golden Cross, sustained the bill and granted the relief prayed. The Golden Cross perfected an appeal from that decree to this court, and assigns error.

The complainants, Charles Knapp and others, sue as members and holders of benefit certificates of the Golden Cross, in their own behalf, as well as that of all others in like case who may desire to unite with them as cocomplainants.

The Golden Cross was incorporated July 7, 1876, under the provisions of section 2, c. 142, p. 234, of the Acts of the General Assembly of Tennessee of 1875, providing for the creation of corporations "for the general welfare and not for the profit," as an insurance order based upon the principle of mutual assessment of its members, and is what is known to the laws of Tennessee as a "fraternal beneficiary association." When the merger and union complained of was attempted to be consummated in April, 1906, it had about 18,500 members, residing in various States of the Union, more than five thousand of them being residents of Massachusetts, and was solvent, having in its treasury funds sufficient to meet the death claims of its members as they matured and were presented. It was a strong and prosperous association.

The Home Circle was incorporated under the laws of Massachusetts, and has its domicile and chief office in that State. It was an older, but weaker, association, having only about nineteen hundred members, chiefly residents of Massachusetts. It was unable to meet the death claims against it as they matured, and on that account was much involved in debt. In this condition, to relieve its embarrassment and that of its members, it sought a union with the Golden Cross.

The executive committees of the two associations, after conference and negotiation, on April 12, 1906, agreed upon a consolidation of the two corporations, the terms of which were reduced to writing and signed

by the members of those committees.  These terms need not be set out in full.  They provided for a consolidation of the two associations, whereby the Golden Cross absorbed the Home Circle, accepting and admitting to membership in it, in a body and without medical examination, the entire nineteen hundred members of the Home Circle, conceding and according to certain officers of the Home Circle certain rank and privileges in the Golden Cross, and certain of the members rights and benefits which they had as members of the Home Circle, but could not have obtained if admitted as members of the Golden Cross in the usual way, received and took over all of the assets of the Home Circle, and assumed and agreed to discharge all its obligations.  This contract, made by the executive committees of the two associations, is called therein a "merger" or "union," and is such in form and substance, and is so treated in the subsequent proceedings attempting to carry the same into effect.

A meeting of the members and holders of benefit certificates of the Golden Cross, to be held in the city of Boston June 21, 1906, was called by the officers of that association, notice of which was given to all the members by a circular letter, in which was set out in full the terms of the proposed merger, for the purpose of considering the agreement made, and approving or rejecting the same. The meeting was held, and the proposed merger approved, to take effect August 1, 1906; but in some financial matters it was not

to be complete and effective until January 1, 1907. There were present in person and by proxy at this meeting 4,482 members, of which 3,464 voted in favor of the merger, and 1,018, among whom were the complainants, protested and voted against it. After this, July 21, 1906, Edward S. Kemper, a member of the Golden Cross, and one of those who opposed the proposed merger, brought his bill in the circuit court of the United States for the Southern Division of New York, against the two associations, for the purpose of enjoining the proposed union, for want of authority of the Golden Cross, under its charter and the laws of the State creating it, to consolidate with another corporation, and, further, if such power exists, that it had not been lawfully exercised; but, for want of jurisdiction by that court over the Golden Cross, his bill, on September 27, 1907, was dismissed.

Complainants, having first demanded of the Golden Cross that it bring a bill for the purpose of having the said merger and union declared void, and to enjoin the consummation of the same, which demand was peremptorily refused, on November 6, 1906, filed the bill in this cause and obtained a temporary injunction enjoining further action under the proposed consolidation; and such proceedings were had that the accounts of the two associations have been kept separate and distinct, so that the funds due them or their members can be ascertained and restored to them. No benefit certificates have been issued by the Golden Cross to

the members of the Home Circle, admitted by the consolidation to membership in the former order, and the affairs of the two associations are in such condition that the respective rights and interests of all parties can be protected.

Complainants' contention is that the Golden Cross was and is wholly without power or authority, under its charter and the general laws of Tennessee, to make and enter into the merger and union attempted to be consummated with the Home Circle, and that its action in the premises is *ultra vires* and void, and that as members and holders of benefit certificates of the Golden Cross they have a right to maintain this bill in the courts of Tennessee to have it so declared, and the corporation and its officers enjoined from carrying it and any subsequent proceedings had by them thereunder into effect.

The validity of the merger is also challenged upon a number of other grounds; but, in the view we have taken of the case, it is not necessary that they be here stated.  There is also much in the record in regard to the advantages and disadvantages which will accrue to the members of the Golden Cross from the proposed consolidation, which we have not stated, because these are all matters of policy for the officers and members of the two associations to consider, and with which courts have nothing to do.

The Golden Cross denies that the agreement, merger, and union made by it with the Home Circle was *ultra*

*vires* and invalid. It insists that both of these corporations, the Golden Cross by the laws of Tennessee, and the Home Circle by those of Massachusetts, had full power and authority to merge and consolidate, and that, having done so in a proper manner, the merger is valid and binding upon all of their respective members.

Before considering the question thus made we will dispose of the one challenging the jurisdiction of the chancery court of Knox county to grant complainants the relief they seek, for want of proper parties before the court. This contention is predicated upon the insistence that the object of the bill is to cancel and annul a contract or agreement made by the two defendants, a proceeding *in personam,* to which both of the defendants are necessary parties, and must be brought before the court by personal service of process, and the constructive service by publication upon the Home Circle is insufficient to give the court jurisdiction over it, and bind it by any decree made in the cause.

The jurisdiction of the chancery court of Knox county of the subject-matter of the litigation cannot be controverted.

It is well settled that courts of equity have jurisdiction to define and determine the extent and limitations of the powers of corporations, and to declare contracts, or other corporate action, made or threatened by the corporation or its officers, in excess and violation of those powers, invalid, and to restrain and prohibit the

performance of them. The right of stockholders in proper cases to maintain suits for these purposes is also well settled.

In a leading case upon this subject, decided by the supreme court of the United States, Mr. Justice Wayne, speaking for the court, said:

"It is now no longer doubted, either in England or in the United States, that courts of equity, in both, have a jurisdiction over corporations, at the instance of one or more of their members, to apply preventive remedies by injunction, to restrain those who administer them from doing acts which would amount to a violation of charters, or to prevent any misapplication of their capitals or profits, which might result in lessening the dividends of stockholders, or the value of their shares, as either may be protected by the franchises of a corporation, if the acts intended to be done create what is in the law denominated a breach of trust; and the jurisdiction extends to inquire into, and to enjoin, as the case may require that to be done, proceedings by individuals, in whatever character they may profess to act, if the subject of complaint is an imputed violation of a corporate franchise or the denial of a right growing out of it, for which there is not an adequate remedy at law." *Dodge* v. *Woolsey,* 18 How., 331, 341, 15 L. Ed., 401.

Mr. Pomeroy, in his great work on Equity Jurisprudence, at section 1093, says:

"In a second class of cases, where the directors are not charged with any misapplication of the corporate property for their own benefit, nor with any breach of their fiduciary duty to the corporation, but, although purporting to act for the common welfare, they have adopted, or are about to adopt, some measure which is *ultra vires* or beyond the scope of their corporate powers, a suit may be prosecuted against them by stockholders to obtain the appropriate relief, either of rescission or of prevention. Under some circumstances even a single dissenting stockholder would not be bound by such an act, done by a unanimous board of directors, and approved by all the other stockholders except himself. The theory of this class of suits is that a stockholder has the right that the operations of the corporation should be kept by the directors within the powers conferred by its charter. Every measure which transcends those powers, although done in good faith, violates the rights which inhere in the ownership of the stock and puts the value of the stock itself at hazard. The suit may be brought by a single stockholder suing on his own account alone, or by a stockholder suing on behalf of all others who are similarly situated. The corporation is, of course, made a codefendant, and any other corporation or person who has joined in the *ultra vires* transaction may also be made a codefendant."

In Clark & Marshall on Private Corporations, vol. 2, pp. 1668-1671, the doctrine is thus stated:

"In equity, therefore, a trust is created by implication in favor of the stockholders that the corporation will not so manage its business or affairs as to defeat the object for which it was created, and that it will use and apply its assets for the purpose of carrying out those objects, and not divert them to other purposes. Nothing, therefore, is now more surely settled in the law of corporations than the doctrine that any unauthorized act or contract by the directors or a majority of the stockholders of the corporation, which will destroy the existence of the corporation or render it unable to perform its functions, or any misapplication or diversion of assets to purposes not authorized by its charter, even though all other stockholders may consent, is a breach of trust towards a dissenting stockholder, against which he is entitled to relief in equity."

"To give a court jurisdiction to enjoin *ultra vires* acts upon the part of a corporation at the suit of a stockholder, it is not necessary that there shall be any intentional wrong or actual fraud upon the part of the officers or other stockholders. It is enough that the act is *ultra vires*. Nor need there be any loss to the corporation. The fact that an *ultra vires* act of business will be beneficial to the corporation, and cannot injure its stockholders, makes it none the less *ultra vires*, and is no answer to a suit by a dissenting stockholder to enjoin the same."

There can be no denial of the jurisdiction of that

121 Tenn—15

court over the Golden Cross and its property. The corporation was before it by personal service of process, and made defense by answer, and the property was impounded by injunction.

The contention of the defendant is solely that the complainants cannot maintain their bill for the relief sought, without having the Home Circle before the court by actual service of process or voluntary appearance. The cases of *Pennoyer* v. *Neff*, 95 U. S., 734, 24 L. Ed., 565, and others of the supreme court of the United States following it, and our own case of *Paper Company* v. *Shyer*, 108 Tenn., 444, 67 S. W., 856, 58 L. R. A., 173, are relied upon to sustain this contention. We do not think these cases are applicable to the one under consideration. They only hold that, where the proceeding is solely *in personam*, publication or other authorized form of substitute service is insufficient, and that where only such service is had a decree affecting the rights of a defendant, not otherwise brought before the court, is void for want of notice or due process of law. In the cases cited, judgments for debt without attachment of property, or in excess of the value of the property attached, were held to be void against nonresidents, made parties defendant by publication under State statutes and without voluntary appearance.

This is not a case of that character. Complainants bring this bill to have the powers and purposes of a corporation, the Golden Cross, chartered under the

laws of Tennessee and domiciled in this State, declared, and an act done by it, claimed by them to be in excess of those powers and in violation of its charter and the laws of this State, declared void, and to restrain the corporation from a threatened and unauthorized use of its franchises and other personal property, presumed to .be at its domicile, and within the jurisdiction and under the control of the court. It is brought to fix the status of a Tennessee corporation, a citizen of the State, and to protect property impounded by proper injunction from an unlawful and authorized appropriation. In cases of this kind all nonresidents of the State who are necessary parties can. be brought before the court by substituted service of process and full relief decreed. They are not within the rule announced in *Pennoyer* v. *Neff,* supra, as therein expressly stated. It is there said:

"Except in cases affecting the personal *status* of the plaintiff, and cases in which that mode of service may be considered to have been assented to in advance, as hereinafter mentioned, the substituted service of process by publication, allowed by the law of Oregon, and by similar laws in other States, where actions are brought against nonresidents, is effectual only where, in connection with process against the person for commencing the action, the property in the State is brought under control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such

property or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem*. As stated by Cooley, in his treatise on Constitutional Limitations (page 405), for any other purpose than to subject the property of a nonresident to valid claims against him in the State, 'due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered.'

"It is true that in a strict sense a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but in a large and more general sense the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclosing a mortgage, or enforce a lien. So far as they affect property in the State they .are substantially proceedings *in rem* in the broader sense which we have mentioned."

The same doctrine has been announced and followed in many other cases. Among them are *Loaiza* v. *Superior Court*, 85 Cal., 11, 24 Pac., 707, 9 L. R. A., 376, 20 Am. St. Rep., 206; *Dunham* v. *Dunham*, 162 Ill., 610, 44 N. E., 841, 35 L. R. A., 79; *Butler* v. *Washington*, 45 La. Ann., 281, 12 South., 356, 19 L. R. A., 816; *Peaslee* v. *Peaslee*, 147 Mass., 180, 17 N. E., 506; *Amy*

Knapp v. Golden Cross.

v. *Amy,* 12 Utah, 286, 42 Pac., 1121; *State* v. *Duket,* 90 Wis., 276, 68 N. W., 83, 31 L. R. A., 515, 48 Am. St. Rep., 930; *Reed* v. *Reed,* 52 Mich., 123, 17 N. W., 720, 50 Am. Rep., 251; *Haddock* v. *Haddock,* 201 U. S., 562, 26 Sup. Ct., 525, 50 L. Ed., 867, 5 Am. and Eng. Ann. Cas., 1.

And it is now well-settled law that in cases involving the *status* of their citizens and proceedings *in rem,* the several States may by statute provide for substituted or constructive service of process against nonresidents who may be interested, so as to bring them before their courts and bind them by decrees there pronounced. Jurisdiction thus obtained is continually exercised by the courts of all the States in suits brought to wind up and administer the affairs of insolvent corporations, to collect debts due from nonresidents where property of the debtor is within the State, and under the control of the court by attachment, or other equivalent process, and in divorce cases. There could not be a stronger case for the application of this rule than the one under consideration. The chief question involved is the extent and limits of the corporate power of a corporation created and organized in this State and under its laws.

Can it be said that the courts of the States are without jurisdiction to construe their own laws, and define and declare the powers of corporations created under them, determine whether acts which those corporations have done or are contemplating doing are within the powers granted, and restrain them from exceeding them

and violating the law of their creation, merely because nonresidents of the State have made contracts with them, and especially where such contracts are illegal and void? This has never been held in any case brought to our attention, and we do not think it will be. It would deprive the several States of the control of their own corporate creatures, and violate their sovereignty. If the law was as insisted by defendant, the several States could not maintain in their own courts proceedings to forfeit the charters of corporations created under their laws, for violation of the provisions of the charter or the general laws of the State, where such corporations had contracted with a nonresident. This case not only involves the *status*—that is, the corporate powers—of a Tennessee corporation, but the court in which it was brought obtained jurisdiction and control of its personal property impounded by injunction, and thus it is within both exceptions recognized in the case of *Pennoyer* v. *Neff*, supra, and others following it.

Complainants do not seek any personal decree against the Home Circle. There is no attempt to compel that corporation to do anything, and as against it this is in no sense an action *in personam*. The gravamen of the bill is to determine the corporate powers of the Golden Cross, a domestic corporation, have a contract made by it, and claimed to be in excess of the powers granted it by its charter, declared *ultra vires* and void, to restrain it from disposing of its assets

under such void contract, and to require it and its officers to return to the Home Circle such assets of that corporation as it has illegally and wrongfully received. We have no doubt of the jurisdiction of the courts of this State to entertain a bill for these purposes, and to bring before them, by publication under the statutes of this State providing for substituted process of this character against nonresidents, all parties residing in other States or countries who may be interested or affected by the *ultra vires* and void act complained of.

We now come to the determinative question in the case; that is, whether or not the Golden Cross could lawfully enter into the contract of merger and union with the Home Circle. We think it could not, and that the consolidation attempted was and is void.

Corporations are creatures of the legislative department of the government, and exist solely and alone by virtue of the act of incorporation. They can exercise no powers which are not expressly granted them, or are necessarily implied from the express powers given. Authority for all their acts must be found in their charters, or the general laws of the State of their creation. Where the charter or law is silent as to the power sought to be exercised, it does not exist; and wherever a grant of corporate power is claimed by a corporation, it must clearly appear and will not be inferred or presumed. All statutes under which a power is asserted must be favorably construed to the State from which the power emanated, and against the grant of it. These

are well-established principles of the common law, and
have been frequently applied by the court. *Deaderick*
v. *Wilson*, 8 Baxt., 133; *Memphis Gayoso Gas Company*
v. *Williomson*, 9 Heisk., 326; *City of Memphis* v. *Mem-
phis Gayoso Gas Co.*, 9 Heisk., 533; *Elevator Co.* v.
*Railroad Co.*, 85 Tenn., 703, 5 S. W., 52, 4 Am. St. Rep.,
798; *Miller* v. *Insurance Co.*, 92 Tenn., 176, 21 S. W.,
39, 20 L. R. A., 765.

The law upon this subject is clearly and forcefully
stated by Chief Justice Gray in *Davis* v. *Old Colony
Railroad Co.*, 131 Mass., 259, 41 Am. Rep., 221, and
quoted with approval by this court in the case of *Ele-
vator Company* v. *Railroad Co.*, supra, in these
words:

"A corporation has power to do such business only
as it is authorized by its act of incorporation to do,
and no other. It is not held out by the government, nor
by the stockholders, as authorized to make contracts,
which are beyond the purposes and scope of its char-
ter. It is not vested with all the capacities of a nat-
ural person, or of an ordinary partnership, but with
such only as its charter confers. If it exceeds its
charter powers, not only may the government take away
its charter, but those who have subscribed to its stock
may avoid any contract made by the corporation in
clear excess of its powers. If it makes a contract man-
ifestly beyond the powers conferred by its charter, and
therefore unlawful, a court of chancery, on application
by a stockholder, will restrain the corporation from

carrying out the contract; and a court of common law will sustain no action on the contract against the corporation."

Corporations have no general power to consolidate or merge with another corporation unless the express authority to do so is found in their charters or the statutes of the States which created them, respectively. In Thompson's Commentaries on the Law of Corporations, vol. 1, sec. 315, it is said:

"The consolidation of the funds of two incorporated companies, so as to form a single corporation, has, generally speaking, the effect of dissolving both the old corporations as distinct entities, and of creating a new corporation. This new corporation can no more be created without the sanction of the legislature than could either of the original constituent corporations. Accordingly it is held in England that, in the absence of any special power for that purpose in their deeds of settlement, an amalgamation between two joint-stock companies is *ultra vires* and invalid, and that the obligations and liabilities arising out of such attempted amalgamation, and assumed by the directors of the purchasing company, cannot be enforced against the shareholders of such company."

In Clark & Marshall on Corporations, vol. 2, sec. 349, it is said:

"The consolidation of corporations is not within the objects of a corporation, in the absence of provisions therefor, and cannot be implied. It is well settled,

therefore, that corporations cannot lawfully consolidate, however desirable and beneficial consolidation may be, unless the State has expressly authorized them to do so. 'Legislative authority is just as essential to a valid consolidation of existing corporations as it is to the creation of a corporation in the first instance. It follows that an agreement between two or more corporations to consolidate, in the absence of legislative, authority, is *ultra vires,* and will not be enforced, even though it may have been partly performed.'

"An *ultra vires* agreement to consolidate is void, and cannot be enforced by the courts at the suit of either party, and it can make no difference that it has been partly performed." Id., p. 1057.

It is conceded on behalf of the defendants that there is not to be found in the charter of the Golden Cross any authority to consolidate with another corporation; but it is said that this power is given it by chapter 198, p. 329, of the Acts of the General Assembly of 1887. This statute is as follows:

"Be it enacted by the general assembly of the State of Tennessee, that all corporations now or hereafter existing under the laws of this State, whether incorporated under special or general laws of the State, shall have the power, and they are hereby authorized and empowered, to lease and dispose of their property and franchises, or any part thereof, to any corporation of this or any other State engaged in or carrying on, or authorized by its charter to carry on in this or any

other State, the same general business as is authorized
by the charter of any such lessor corporation, and said
corporations shall likewise have the power, and are
hereby authorized to make, any contract for the use,
enjoyment, and operation of their property and fran-
chises, or any part thereof, with any other such cor-
poration of this or any other State, on such terms and
conditions as may be agreed upon between the contract-
ing corporations; and such lessee corporation or cor-
porations is authorized and empowered to carry out
such leases and contracts: Provided, however, that any
such leases or contracts, when made by or under the
direction of the boards of directors of the contracting
corporations, shall be authorized or approved by the
vote of a majority, in amount of the stock of the lessor
corporation present or represented at a regular or
called meeting of the stockholders of said corporation:
And provided further, that sixty days' notice of such
meetings be given in a Memphis, Knoxville and Nash-
ville daily newspaper of the time, place, and purposes of
such meeting: And provided further, that where the
lessee corporation is a corporation of this State, the
authority or approval of its stockholders shall in like
manner be obtained to the contract or lease: And pro-
vided further, that this act shall not be so construed
as to authorize any corporation of this or any other
State to lease or purchase any railroad and line that
is a competitor for the same business with any line
already owned or under control, by lease or otherwise,

or two lines of railway that are competitors for the same business in this State."

This court had this statute before it in the case of *Coal Creek Company* v. *Tennessee Coal Co.*, 106 Tenn., 651, 62 S. W., 162, and held that it did not embrace private corporations, but only *quasi* public corporations. We have again examined the question, and are satisfied with the soundness of that case, for the reasons therein stated, and without further discussion adhere to the construction there given the statute.

But, if it did embrace private corporations, it could not be held to apply to those of the character and class to which the Golden Cross belongs; that is, "corporations for the general welfare of society, and not for individual profit." The statute by its terms clearly contemplates corporations which have a capital stock, stockholders, and which may and do own property to be used and disposed of in carrying on and conducting some sort of business, in which earnings may be made for the individual profit of the stockholders. It provides for the lease and disposition of the property of the corporation, provided that the same be approved of by a vote of the majority of "the stock," in a meeting of "the stockholders" held for that purpose, of which notice as therein required shall be given.

Fraternal beneficiary associations, as known to the laws of Tennessee, have neither capital stock, stockholders, nor property to be used in business for individual profit. Those interested in such associations are

not denominated "stockholders," but "members." They are so styled by the statute under which the Golden Cross was incorporated (chapter 142, p. 232, Acts 1875; Shannon's Code, sec. 2524), where, in referring to this class of corporations, it is provided: "The general welfare of society, not individual profit, is the object for which this charter is granted, and hence the members are not stockholders in the legal sense of the term, and no dividends or profits shall be divided among the members." They are also called and known as "members," and not "stockholders," in all the subsequent statutes enacted by the general assembly for the purpose of regulating and controlling fraternal beneficiary associations, organized under the laws of this State, or of other States doing business in this State. We refer to chapter 19, p. 144, Acts 1897; chapter 113, p. 163, Acts 1901; and chapter 480, p. 1021, Acts 1905. They have no stock in the corporation, for the good reason that none can be subscribed or issued. These associations have no franchises and property, which are susceptible of lease or sale, so as to be used and operated by another corporation. The very nature of the corporation is a conclusive argument in support of this proposition. We cannot see, under any construction that can be placed upon the statute, how it could be made to apply to a corporation like that of the defendant, and we hold that it does not.

Nor does the statute authorize a consolidation and union of a domestic corporation with a foreign corpo-

ration. A lease of the property of one corporation to another, to be operated by it, is entirely a different thing from a merger or union of the two corporations. But it is unnecessary to construe the statute in this respect, as it does not embrace the defendant corporation, and therefore cannot be relied upon to support its action attacked in this case.

It is said for the defendant that it is held, in the case of *Coal Creek Co.* v. *Tennessee Coal Company,* supra, that private corporations have the power under the common law to sell and dispose of their property. This is true, and it is sound law; but it has no application to this case. The contract or agreement made by the Golden Cross with the Home Circle does not involve a sale or lease of its property or franchise. It has no property to sell or lease in that sense. The contract is in form and substance a merger of the two corporations, by which the Golden Cross takes over and absorbs the Home Circle, admitting its one thousand nine hundred members to full membership, without medical examination, as required by the by-laws of the former, although some of them were ineligible to such membership on account of age, secures to some of them certain rights which they would not be entitled to under those by-laws and the laws of Tennessee, if admitted as members of the Golden Cross in the usual way, and conceding some of the officers of the Home Circle certain rights and rank to which they were entitled as members of the Home Circle.

Knapp v. Golden Cross.

It is styled a "merger and union" of the two companies in the original agreement made by the executive committees of the two corporations and all subsequent proceedings had for the purpose of approving and carrying it into effect. It is so styled in the pleadings in this case, and in fact and legal effect is a consolidation of the two associations. It is, therefore, a contract which the Golden Cross had no authority, under its charter or the laws of Tennessee, to make, or, having made, to carry into effect.

The complainants have a right to maintain a bill in the courts of Tennessee to have it declared *ultra vires* and void, and to enjoin the defendant and its officers and agents from doing or performing any act in compliance with its stipulations and terms, and, as incidental to that relief, to have an account taken of any assets of the Home Circle which have come to the hands of the Golden Cross, the same ascertained and returned to it, or its proper representatives, in all things as ordered by the chancellor.

The decree of the chancellor is therefore affirmed, with cost.