## Wytheville.

### MERIWETHER JONES, ET ALS., v. WM. F. RHEA, CHAIRMAN STATE CORPORATION COMMISSION.

#### June 23, 1921.

1. MANDAMUS—*Appeal and Error—Transcript of Record.*—If petitioners, members of a social club, were entitled to appeal from an order of the State Corporation Commission merging their club with another, they were entitled to a transcript of the record in the merger proceedings for the purposes of appeal, and if the person required by law to furnish this record refuses to do so, mandamus is the proper remedy to secure such transcript.

2. MANDAMUS—*Transcript of Record in Proceedings Before Corporation Commission—Chairman of Commission as Party Defendant.*—Subsection (f) of section 156 of the Constitution of Virginia fixes the person to furnish the record in case of an appeal, and imposes upon the State Corporation Commission the duty to file with such record a written statement of the reasons upon which it based its action from which appeal was taken. And where persons are entitled to appeal from an order of the commission, and a transcript of the record is denied them, the chairman of the commission alone is the proper party to mandamus proceedings to obtain the transcript.

3. CORPORATIONS—*Merger—Social Clubs—Exclusiveness of Remedy Under Section 3822 of the Code of 1919.*—The provision contained in section 3822 of the Code of 1919, in regard to the valuation of the interest of dissatisfied members or stockholders in case of the merger of their corporation with another, only applies in those cases in which the corporations seeking to merge have proceeded in all respects by authority of law. The provision, therefore, is not exclusive of the right of dissatisfied members to contest the validity of an order of merger by the State Corporation Commission claimed to be destructive of their rights and interests, and utterly without warrant of law.

4. APPEAL AND ERROR—*Statutory Origin of Appeals.*—As a general proposition, appeals are of statutory origin, although in some instances they are afforded directly by the Constitution.

44

5. SOCIETIES AND CLUBS—*Membership—Right of Members to Oppose Merger of Club with Another.*—Membership in a social club entitles the member to certain social opportunties and enjoyments, and affords him an interest, though not a transmissible interest, in the club property, and an effort by minority members of a club to oppose a merger of the club with another was an effort on the part of such members to assert a material right, an effort to maintain a status that was agreeable to them, and which had been secured under the law, and to oppose the establishment of a new status which to them was objectionable, and, in their contention, in manifest contravention of law.

6. APPEAL AND ERROR—*Corporation Commission—Right of Minority Members to Appeal from an Order Merging Social Clubs.*—In mandamus proceedings against the chairman of the State Corporation Commission to obtain a transcript of the record of merger proceedings before the Corporation Commission respondent insisted that, as petitioners, minority members of one of the clubs merged by the order of the commission, were not formal parties to the proceedings before the commission, they are not entitled to an appeal, even though they sought to become parties, and their petition of intervention was erroneously rejected by the commission.

   *Held:* That, under sections 3734, 3833 and 6336, Code of 1919, and the Constitution of 1902, section 156, subsection (d), petitioners were entitled to appeal.

7. APPEAL AND ERROR—*Corporation Commission—Right of Minority Members to Appeal from an Order Merging Social Clubs.*—By section 3833, title 34, Code of 1904, an appeal is given from an order of the commission to any party in interest. The test to be applied to determine whether a person is entitled to appeal is, to ascertain whether he is a party (person) in interest. If he is, then he is as definitely given an apeal as the applicant in the proceedings. In the instant case, petitioners, minority members of a social club, were something more than persons in interest. They sought to become parties in interest at the time the application for merger of their club with another was set down for hearing, and exerted every possible effort to secure that status.

8. APPEAL AND ERROR—*Parties to Appeal—Formal Parties.*—A litigant who seeks to become a party, and is entitled to become a party to proceedings in which he is interested, and is erroneously rejected, should not be required to seek relief in a roundabout fashion by a distinct and separate suit, but should be re-

garded, for the purposes of appeal, as possessing the status of one who is a formal party to the proceedings in which his rights and interests are being litigated.

9. CORPORATION COMMISSION—*Intervention—Minority Members of Social Club.*—While the statutes contain no direct provision for intervention in any proceedings before the Corporation Commission yet it is to be presumed that such intervention is contemplated in proper cases affecting the interests of persons not formal parties to such proceedings, inasmuch as the commission has made provision for intervention. See page 1451, Code of 1919.

10. CORPORATION COMMISSION—*Merger of Social Clubs—Appeal by Minority Stockholders.*—In the instant case respondents asserted that in the matter of the merger of the social clubs in question, the Corporation Commission proceeded ministerially, and hence minority members of one of the clubs had no right of appeal from the order of merger. But an appeal may be given either in a ministerial proceeding, or where the action is judicial. It is purely a question of intent, to be derived from the language of the General Assembly; nor is it at all clear that the commission was in all respects acting ministerially in the merger proceedings.

11. APPEAL AND ERROR—*Final Judgments and Decrees—Orders of Corporation Commission—Merger of Social Clubs.*—Section 3833, Code of 1919, affording an appeal from "any order or decision of the commission," does not use the word "final," and there may be an appeal of right from an interlocutory order. Moreover, in the instant case, the order rejecting the application of the petitioners, minority members of a social club, to intervene in the pending proceeding to merge their club with another and excluding them entirely from participation therein, was, as to them, a final order.

12. APPEAL AND ERROR—*Corporation Commission—Merger of Social Clubs—Right of Minority Stockholders.*—Petitioners, minority members of a social club, who sought to intervene in proceedings before the Corporation Commission for the merger of their club with another, on the ground of lack of jurisdiction of the commission, were not only persons in interest, but were entitled to be heard upon the basic question which they sought to raise, and to appeal from the order of the commission rejecting their application to become parties to the proceeding. Petitioners' interest in the merger proceedings was

direct and vital, and their contention that these proceedings were without warrant of law was fundamental.

13. STATUTES—*Construction—Intention.*—The object of all interpretation and construction of statutes is to ascertain the intention of the lawmakers, and this intention is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense.

14. STATUTES—*Construction—Special and General Intent.*—Given a manifest controlling intent, particular words may by construction be impressed with a meaning that will be in harmony with that intent. But, on the other hand, the section or sections to be construed may so clearly express a special intent with respect to the subject matter, that that intent must be made effective and the words used will not be bent and disorted from their ordinary meaning and common acceptation. After all, the intent of the legislature is not to be derived by intuition, or any process of divination, but from the words used.

15. WORDS AND PHRASES—*"Business."*—The word "business," as a general proposition, refers to the occupation of conducting trade, or monetary transactions of any kind, though it is sometimes used in a wider sense.

16. CORPORATIONS—*Merger—Authority.*—Express statutory authority is required for the merger of corporations.

17. SOCIETIES AND CLUBS—*Whether Club Engaged in Business.*—Primarily, and as ordinarily understood, a social club is not a commercial organization since it is not organized for profit, and the fact that a club incidentally rents rooms to its members, runs a restaurant, sells cigars, soft drinks etc., does not make a social club, operated distinctively as such, a business corporation.

18. SOCIETIES AND CLUBS—*Merger—Right of Social Clubs to Merge.*—Sections 3821, 3822, Code of 1919, providing for merger and consolidation of corporations, do not apply to nonstock corporations, such, for example, as social clubs. There is a plain grant of authority to merge to corporations carrying on the same or similar business. The procedure of consolidation is appropriate to stockholding corporations, thus strengthening the conclusion that the original authority to consolidate was intended for such corporations only. A general view of the statutes does not indicate in any plain or express fashion, the in-

tent that the merger statutes shall apply further than the apparent intendment of those sections indicates.

19.   STATUTES—*Construction—Intent of Legislature—Function of the Courts.*—It is the function of courts to ascertain the intent of the General Assembly, and to enforce the law as it is written. It is not their duty, unless such action is clearly indicated either in the sections under immediate consideration or upon a comprehensive view of the statutes *in pari materia,* to wrest language from its obvious and apparent meaning, and make it thereby conform to what is conceived to be the spirit of the act.

Original application for mandamus.   Petition granted.

The opinion states the case.

*Samuel A. Anderson, E. P. Cox* and *C. M. Chichester,* for petitioners.

*Munford, Hunton, Williams & Anderson, Jos. C. Taylor,* and *George Bryan,* for respondent and appellees.

SAUNDERS J., delivered the opinion of the court.

This is a petition for a mandamus, filed by Meriwether Jones, Edward V. Valentine and others, petitioners, asking for a peremptory writ of mandamus against the Honorable William F. Rhea, chairman of the State Corporation Commission of Virginia.   Petitioners make the following allegations:

I.   That petitioners are members in good standing of the Westmoreland Club.

II.   That there are two clubs in the city of Richmond, organized "for the promotion of social intercourse, and for the purpose of maintaining a library and reading room," known respectively as the Westmoreland Club and Commonwealth Club.   That these clubs were organized by acts of the General Assembly of this State that took effect prior

to the act of the General Assembly concerning corporations, effective as of May 21, 1903. That since that date neither of these clubs has asked for any amendment to its charter. That the charter of the Westmoreland Club is an act approved March 20, 1877, and an amending act, approved April 2, 1902.

III. That in July, 1920, the officers of the Westmoreland Club, proceeding without authority of law, presented a petition to the State Corporation Commission, praying an order authorizing the merger of the Commonwealth Club and the Westmoreland Club, the club established by this consolidation to be known as "Westmoreland Club."

IV. That at the time the application for merger was presented to the commission, the petitioners appeared by counsel before said commission, and asked to be heard. That the application was set down for hearing on July 20, 1920, and on that day petitioners presented a petition conforming to the rules prescribed by said commission for persons seeking to intervene in proceedings before that tribunal, in which they prayed to be allowed to intervene in the proceedings for merger. An agreed statement of facts was filed at the same time.

V. That counsel for petitioners, as well as counsel for applicants, were heard on July 20, and the matter taken under advisement by the commission.

VI. That on October 7, 1920, an opinion (adverse to the petitioners) was delivered in the case, and on the same day petitioners requested, and were afforded, a copy of the same.

VII. That on October 8, 1920, counsel for petitioners appeared before the commission, and prayed a suspension of the order of merger, in view of an appeal proposed to be taken by petitioners. That on said day an order confirming the proposed merger was entered, but no order of suspension was included.

VIII. That thereupon petitioners gave notice of an application for an appeal, and a request for a supersedeas, and request was made for a transcript of the record of the proceedings before said commission in relation to the proposed merger.

IX. That on October 26, 1920, the commission entered the following order:

"In the matter of the merger of Commonwealth Club and the Westmoreland Club, with and into the Westmoreland Club.

"This day came counsel for Meriwether Jones, Edward V. Valentine and others, and presented a petition, requesting the commission to furnish a transcript of the record for appeal in the proceedings in relation to the merger of the Commonwealth Club and the Westmoreland Club into Westmoreland Club, and the commission having duly considered the request to furnish such record, is of the opinion that the said petitioners are not entitled to such transcript of the record for appeal, and it is so ordered."

Basing their request upon the foregoing allegations, and others not necessary to be recited, petitioners conclude their petition with a prayer for a peremptory writ of mandamus, directed to Honorable William F. Rhea, chairman of the State Corporation Commission, commanding and directing him to furnish petitioners with a copy of the record of the proceedings in the matter of the merger of Commonwealth Club and the Westmoreland Club into the "Westmoreland Club," for the purposes of an appeal to this court from the order of the commission confirming the merger agreement between the clubs aforesaid.

The Westmoreland Club, one of the respondents to the foregoing petition, filed on its part a separate demurrer and a separate answer. The grounds of demurrer, in abridged form, are given below:

I. That petitioners were not parties to the merger proceedings which were taken under the statute laws of this State, fixing the procedure, and establishing the appropriate parties thereto. That these statutes do not permit minority stockholders, or members, to become parties to proceedings for the merger of corporations before the State Corporation Commission, or provide for, or permit, the intervention of such stockholders, or members in such proceedings.

That the said statute laws do not authorize minority stockholders, or members of such merging corporations, to appeal from an order of the commission certifying a merger, as provided by the statute, and do not afford authority to the commission to furnish a transcript of the record of such proceedings for an appeal, or give authority to the Supreme Court of Appeals of Virginia, to grant an appeal from the order of the commission in such proceedings.

II. That the statute laws of Virginia permit an appeal, or writ of error, to be granted by the Supreme Court of Appeals only to a party to a cause in a tribunal from which such appeal, or writ of error, will lie, who is aggrieved by the decision of such court, or tribunal, and as petitioners were not, and could not have become, parties to said merger proceedings, said Supreme Court is not authorized to grant to petitioners, or to any of them, an appeal from said order.

That the said statute laws do not authorize said commission to furnish to petitioners the transcript desired, nor authorize said Supreme Court to compel the commission by mandamus, or otherwise, to afford such transcript, or to grant an appeal, or writ of error, to said petitioners.

III. That the petition shows on its face that petitioners were not parties to the merger proceedings. Hence, they are not entitled to a transcript of the record of said proceedings, or to an appeal from the order of the Corporation Commission.

The allegations of respondent's answer need not be recited, since there are practically no issues of fact between the parties that require determination, the substantial facts being agreed. The answer insists upon its objections to the defects of the petition, and asserts that in all respects the proceedings, in respect to the merger, followed and complied with the requirements of law, and that the order of the commission was valid.

The answer admits that the essential facts in the matter "were agreed," and further that over objection of respondent the commission heard petitioners at length; but with respect to the first admission it is asserted in said answer that the agreement was with the "express provision that such agreement was not a waiver of any of the rights of respondent to object to the intervention of the petitioners in said proceedings;" and with respect to the second admission, that the commission "expressly reserved its decision as to the right of petitioners to intervene, or to be heard thereon, counsel for petitioners having been heard as a matter of courtesy." The essential questions to be decided are raised by the demurrer. There is also pending a petition for an appeal and supersedeas from the order of the commission.

It was agreed by counsel that if it should be determined that the petitioners are entitled to a writ of mandamus, and an appeal, these issues being necessarily interwoven, this court, in the same decision, should dispose of the appeal on the merits. This may be very readily done, as all the matters arising in these proceedings on the preliminary questions, and the merits, have been very elaborately and ably argued by counsel for the respective parties, with abundant citations of authority.

The essential questions of law raised by the demurrer to the petition for a mandamus are:

I.  That the social clubs concerned having proceeded in strict conformity with the statutes, the order of merger is unassailable by appeal.

II.  That minority members, or stockholders, have no right to intervene, or be heard in such proceedings.

III.  That not being parties, nor entitled to be made parties, petitioners · do not belong to the class of aggrieved persons (*i. e.*, parties) who are afforded an appeal by law.

IV.  That petitioners having no right of appeal, they are not entitled to a transcript of the merger proceedings before the commission, for the purposes of appeal.

In the brief for the Westmoreland Club, on the petition for mandamus, it is said: "The petition in one aspect proceeds upon the necessary theory that the action of the commission complained of was purely administrative, or ministerial, and that a mandamus will lie. In the other aspect it proceeds upon the theory that the action complained of was judicial and discretionary, from which an appeal will lie. The two theories are entirely inconsistent, and the prayers of the petition being based upon conflicting theories of the case, it cannot be maintained."

The contention of petitioners is that they "have an undoubted right to appeal from the order of said honorable State Commission merging said clubs, which order, if valid, would directly affect the social and property rights of your petitioners."

[1] If petitioners are entitled to appeal from the order of said commission in said proceedings, as alleged, then they are entitled to a transcript of the record in said proceedings for the purposes of appeal, and if the person required by law to furnish this record refuses to do so, mandamus is the proper remedy to secure such transcript. *Lancaster v. Stokes*, 119 Va. 149, 152, 89 S. E. 85; Burks' Pleading and Practice, pp. 776-7.

Petitioners are not seeking action at the hands of the commission, but are asking to have the chairman of the commission furnish the transcript required to be furnished by the Constitution in all cases in which an appeal is taken from an order of the commission. If petitioners are entitled to an appeal, they are entitled to a transcript; if they are entitled to a transcript, mandamus is the proper proceeding by which to secure it and compel the performance of a purely ministerial act. The claim of petitioners that they are entitled to an appeal will be considered later, and in due course.

[2] Subsection (f) of section 156 of the Constitution of Virginia fixes the person to furnish the record in case of an appeal, and imposes upon the commission the duty to file with such record a written statement of the reasons upon which it based its action from which the appeal was taken. This subsection is as follows:

"In no case of an appeal from the commission shall any new or additional evidence be introduced in the appellate court; but the chairman of the commission shall certify to the appellate court all the facts upon which the action appealed from was based, and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by, the commission, as may be selected, specified and required to be certified by any party in interest, as well as such other evidence so introduced, or considered, as the commission may deem proper to certify. The commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof, a written statement of the reasons upon which the action appealed from was based, and such statement shall be read and considered by the appellate court upon disposing of the appeal."

Provided they can maintain their right to an appeal as a matter of law, it is considered that petitioners have pursued

the appropriate course to secure a copy of the record in the merger proceedings. To that end, the chairman of the commission alone is the proper party to the petition for mandamus.

[3] Respondent further insists that minority members, or stockholders, of corporations, objecting to a proposed merger, have a complete statutory remedy for the protection of their rights, and that being so petitioners are not entitled to a mandamus. This reference is to section 3822, Code of Virginia, relating to the manner of consolidation, or merger, etc., and the remedy of dissatisfied stockholders. This section provides that any stockholder who is dissatisfied with the merger may, as prescribed by the statute, "secure from the merged, or consolidated, corporation the fair cash value of his stock as of the day before the vote for the agreement, or (?) consolidation of his corporation was cast." But this remedy obviously is not intended to apply, save in those cases in which the corporations seeking to merge have proceeded in all respects by authority of law. Should the minority seek to challenge the application of the merger statutes to social clubs, and thereby assail the jurisdiction of the commission, it is obvious that this provision for the valuation of the interest of dissatisfied members would not be exclusive of their right to contest the validity of an order of merger claimed to be destructive of such members' rights and interests, and utterly without warrant of law.

A similar question was presented in *General Inv. Co.* v. *Lake Shore & M. S. Ry. Co.*, 250 Fed. 160, 174, 162 C. C. A. 296, in which the effort was made to enjoin a consolidation alleged to be illegal. Said the court: "It is further urged that the motion to dismiss should have been granted for inadequacy of remedy at law, by reason of the fact that section 9034 of the Ohio General Code provides that a stockholder who refused to convert his stock into that of a consolidated company, shall be paid the highest market value thereof,

during the two years preceding the making of the agreement of consolidation by the directors, if he had previously so required. The statute, whose primary purpose was evidently to provide just compensation to a stockholder dissenting from a consolidation lawfully made, does not, in our opinion, provide an adequate remedy for a stockholder who seeks in advance to restrain the corporation from entering into an illegal consolidation."

[4] The right of the petitioners to an appeal, if it exists, rests upon the Virginia statutes. As a general proposition, appeals are of statutory origin. In some instances they are afforded directly by the Constitution.

[5-7] Respondent insists that as petitioners were not formal parties to the proceedings before the commission, they are not entitled to an appeal, even though they sought to became parties, and their petition of intervention was erroneously rejected by the commission. In this regard, the brief for respondent states that when petitioners applied to the commission for "leave to intervene in the merger proceedings, and object to the merger," "the commission heard them as a matter of courtesy, reserving the question raised by objection of the corporations as to the right of the minority to intervene in such proceedings. In its final action, the commission held that no such right of intervention existed, and refused to admit petitioners as parties in the proceedings, or to admit them as parties to the record, or to recognize them as having any legal status in the proceedings whatever."

Hence, it seems to be fully conceded that petitioners have been diligent to assert their right to be heard, and to that end sought by formal steps to become parties to the merger proceedings. Their efforts in this respect were frustrated by the commission, "which refused to admit them as parties in the proceeding, or to admit them as parties to the record,

or to recognize them as having any legal status in the proceedings."

Membership in a social club entitles the member to certain social opportunities and enjoyments, and affords him an interest, though not a transmissible interest, in the club property. The merger contemplated would change the environment of the then members of the Westmoreland Club, and project them into a new environment not created as the environment of the said club had been created. The members of the Westmoreland Club who objected to the environment that would be effected by the merger, or who would be jostled out of their accustomed modes of life in the old surroundings of their choice, would certainly be substantially aggrieved by an order of merger that had no foundation in law. An effort to oppose such a merger was an effort on the part of such members to assert a material right, an effort to maintain a status that was agreeable to them, and which had been secured under the law, and to oppose the establishment of a new status which to them was objectionable, and, in their contention, in manifest contravention of law. There are three sections of the Code providing appeals from orders of the commission. These statutes must be construed to determine whether a party seeking to appeal from an order of the commission must be an actual party of record. It is not a matter of necessity, or fundamental principle, that an aggrieved person must be a formal party of record in a proceeding to entitle him to appeal from a ruling to his prejudice.

In the exercise of legislative authority, interested persons, not formal parties nor even appearing to contest an order which affects them, may be afforded an appeal from such order as a matter of right. For instance, under section 5249 of the Code, the clerk of any circuit court may admit wills to probate, in the same manner and with like effect as the court could do in session. The same section provides

"that any person interested may, within one year after the entering of such an order, appeal therefrom as a matter of right, upon giving bond, etc., to the court whose clerk has made an order." The architects of the present Constitution of this State evinced a very liberal attitude towards appeals from orders of the Corporation Commission. Subsection (d) of section 156 of the Constitution, after affording appeals from a great variety of orders of the commission, provides that these appeals shall be of right. The same subsection further provides that, "The General Assembly may also, by general laws, provide for appeals from any other action of the commission, by the Commonwealth, *or by any person interested,* irrespective of the amount involved." (Italics supplied.) It is hardly necessary to say that in the exercise of this power to provide for appeals, it is competent for the General Assembly, if so minded, to afford an appeal to any person, whether a party or not, who is interested in any given action of the commission. The intent of the General Assembly in the above respect, is to be ascertained from the legislation which it has enacted on the subject.

The three sections of the Code affording appeals from the orders of the commission, and referred to *supra,* are as follows:

I. Section 3734 (found in Title 33, relating to State Corporation Commission). "Appeal to Supreme Court. * * * The Commonwealth, or any party aggrieved by any final finding, order, or judgment of the commission, shall have, of right, regardless of the amount involved, an appeal to the Supreme Court," etc.

II. Section 3833 (found in Title 34, containing general provisions applicable to corporations, and including merger sections). "Appeals from the commission. An appeal shall lie from any order, or decision, of the State Corporation Commission to the Supreme Court of Appeals, at the

instance of the applicant, or of any party in interest," etc.
The revisors' note to this section says: "This section, as
revised, allows the appeal to any person interested, and does
not restrict it, as was done by section 53 of chapter 5 of the
act. This is authorized by section 156 (d) of the Constitu-
tion." It will be noted that the revisors' note, *supra*, in a
measure, interprets section 3833. This section gives an ap-
peal to "any party in interest." The note referring to this
section says: "It allows the appeal to any *'person inter-
ested.'"* (Italics supplied.)

III. "Section 6336. In what cases petitions for appeal,
writ of error, or supersedeas, may be awarded. Any per-
son who thinks himself aggrieved by, etc., * * * or by any
final order, judgment, or finding, of the State Corporation
Commission, irrespective of the amount involved, except,
etc., may present a petition, etc., for an appeal from the
decree, or order; * * " So much only of the above section is
cited as applies to appeals from the commission.

In the connection in which the citation, *supra*, is found,
the section gives many aggrieved persons the right to pre-
sent petitions for appeal in proceedings to which they are
not formal parties, and in respect to which they must seek
admission to become parties, by applications to the tri-
bunal conducting said proceedings. Should this tribunal
erroneously reject this application, and decline to hear
them, or to permit them to become parties, these appli-
cants would be in precisely the same situation in respect
to the right to be allowed an appeal, as the petitioners in
the instant case. Suppose in the case in judgment, the
application to merge had been rejected by the commission,
what would have been the remedy of the applicants?
Plainly, an appeal under section 3833, *supra*. But this
section says that an appeal shall lie at the instance both
of the applicant, and of any "party in interest." Who are
the parties in interest to whom this right of appeal is given

equally with the applicants? Certainly the petitioners are interested in the order, both in respect of their social rights and property interests. The language of the section is as broad as possible. An appeal is given from "any order of the commission" to "any party in interest." The test to be applied to determine whether a person is entitled to appeal is, to ascertain whether he is a party (person) in interest. If he is, then he is as definitely given an appeal as the applicant in the proceedings.

But in the case in judgment the petitioners are something more than persons in interest. They sought to become parties in interest at the time the application for merger was set down for hearing, and exerted every possible effort to secure that status. Respondent insists that whatever may have been their efforts in the above direction, they failed, and that even if the avenues to relief by ther remedies are open, the one by way of appeal is barred.

[8] Conceding that in other jurisdictions no one can appeal from a decree, or order, affecting his interests, unless he is a formal party to the proceedings in which the order is entered, and such appears to be the rule in those jurisdictions, such is certainly not the rule in this State when the effort has been made to become a party, so long as the case of *Moon's Adm'r* v. *Wellford, Judge,* stands unreversed. This case, which is found in 84 Va. p. 35, 4 S. E., 572, is criticised by respondent, and we are asked to disregard it. But this we are not disposed to do. The conclusion reached in that case by what appears to be satisfactory reasoning, is certainly in the interest of directness of remedy. The rule which it establishes is one that ought to have been established. A litigant who seeks to become a party, and is entitled to become a party to proceedings in which he is interested, and is erroneously rejected, should not be required to seek relief in a roundabout fashion by a distinct and separate suit, but should be regarded, for the purposes

of appeal, as possessing the status of one who is a formal party to the proceedings in which his rights and interests are being litigated.

In *Moon's Adm'r* v. *Wellford, Judge, supra,* it appears that proceedings were pending looking to the disposition of the property of the Richmond and Alleghany Railroad Company. Moon's administrator presented a petition asking to be made a party, and thereby be put in a position to make defense. The trial court denied the petition, stating that relief could be secured otherwise. Thereupon, a mandamus was applied for to compel the trial judge to allow petitioner to become a party. The court treated the petition for a mandamus as a petition for an appeal, and granted an appeal and supersedeas. In that connection the court said: "We are of opinion that Moon's administrator had a plain and adequate remedy by appeal." 84 Va. 38, 4 S. E. 574. Referring to the action of the trial court refusing leave to Moon's administrator to become a party to the pending suits for foreclosure, the court said: "The motion itself, for leave to file, or to be made a party, is a proceeding in court, to which the mover is a party, if no others; and if his motion be overruled, he may except to and appeal from the ruling in this *ex parte* proceeding, in which he may have vital and imperiled interests." 84 Va. p. 39, 4 S. E. 575. The following is taken from the syllabus: "Allowing or denying leave to become a party is a matter of sound legal discretion; but the remedy of denial is not mandamus, but appeal." 84 Va. p. 34 (4 S. E. 572).

The cases in Virginia cited by respondent, and relating to the right of appeal, rest upon the statutes then in force.

*Wingfield* v. *Crenshaw,* 3 Hen. & M. (13 Va.) 245, was a contest concerning the granting of leave to erect a mill. Crenshaw, the party asserting that he was aggrieved, did not own the property on which the mill was proposed to be erected, and was not a party to the record. Judge Roane in

his opinion says that the word "person" had been construed to mean "party," and that this meaning was emphasized by the use of the word "contest" in the same connection in the then statute. It was held that the writ of error had been improvidently awarded, since Crenshaw was not a party to the record. The syllabus says: "The interested person (i. e., Crenshaw) should have made himself a party in the trial court, and thereby secured the right of appeal."

In *Triplett* v. *Jameson*, 2 Munf. (16 Va.) 242, a devisee filed exceptions to the allowance by the county court of commissions to the personal representative. His right to an appeal was contested. The following is taken from the syllabus: "Any person interested in the settlement of an executor's account, may object to its being allowed and recorded, and being overruled in such objection may appeal to a superior court." The court, Judge Roane delivering the opinion, said: "Under the decision of this court in the case of *Wingfield* v. *Crenshaw* (3 Hen. & Munf. p. 245), the case was properly carried by him (i. e., the devisee who excepted) by way of appeal to the district court. The only doubt the court had on the subject was whether, inasmuch as the order of the court of Fairfax county was only *ex parte*, an appeal would lie from the judgment; but * * * the court is inclined to sustain the appeal under the provision of the act which gives a right of appeal *to all* who may be injured or aggrieved, by the sentence or judgment of a county court, *in any suit or contest whatsoever.*" (Italics supplied.)

In *Supervisors* v. *Gorrell*, 20 Gratt. (61 Va.) 484, the contest was over the condemnation of land for a site for a courthouse. The persons claiming to be aggrieved did not own the land sought to be condemned, but were simply taxpayers of the county. This fact was emphasized by the court. The words to be construed in the statute then in force were, "any person who is a party in any case." The court said in relation to the right of appeal: "A person

must be a party, and aggrieved." Further: "The exceptants in this case seeking an appeal had no interest whatever in the land condemned." *Id.*, p. 518. "Hence had no right to become parties." *Id.*

These cases were decided upon the statutes respectively cited by the court, and appear to have been properly decided. In the *Gorrell Case*, the persons claiming to be aggrieved were not aggrieved in the contemplation of the law. The interest they claimed was too remote. In the instant case, the interest of the petitioners was immediate and direct.

In the case of *Wingfield* v. *Crenshaw*, the decision was clearly compelled by the wording of the then statute. The person seeking an appeal was not, and had not sought to become, a party to a "contest." Hence, he was not such an aggrieved person as was entitled to an appeal.

The case of *Triplett* v. *Jameson, supra*, is almost direct authority for petitioners' contention. A devisee excepted to the judgment of the county court allowing commissions to a personal representative, and took an appeal to the district court. This appeal was sustained, the court saying: "The court is inclined to sustain the appeal under that provision of the act which gives a right of appeal to all who may be injured or aggrieved by the sentence or judgment of a county court in any suit or contest whatsoever." It was certainly a liberal construction of the act to hold that, by excepting to an *ex parte* order allowing commissions, a person interested in the estate thereby became entitled to an appeal.

But neither the *Gorrell Case*, nor the *Wingfield* v. *Crenshaw Case*, nor any of the Virginia cases cited relating to the persons who may appeal, presents the precise situation arising in the case in judgment, of persons with an immediate and direct interest in a pending proceeding who have diligently sought, and been denied, the right to become par-

ties in that proceeding. *Moon* v. *Wellford* deals with that
situation, and hence is a decision directly in point in this
controversy. If, in any of the cases cited, the primary effort
had been made by a party holding a sufficient interest and
entitled to be heard, to become a party in the trial court,
and that effort had been rebuffed, the situation would be
precisely that appearing in the case in judgment and in
*Moon* v. *Wellford, supra.*

Under such circumstances, to remit the aggrieved party
to a separate proceeding would be intolerable circuity. It
is contrary to the principles of common justice, and of
simple and direct procedure, designed to effect a speedy
termination of litigation, if the remedy by appeal may be
afforded under the law, to compel a party entitled to inter-
vene in a proceeding, and erroneously rejected, to secure
by mandamus the right sought. Simple and direct action,
if available, is always to be preferred to roundabout
procedure.

[9] Respondent insists that no provision is made in the
statute for the intervention of minority members, or stock-
holders, in merger proceedings. It is true that there is no
such provision in express terms, but we do not find in the
statutes any direct provision for interveners in any pro-
ceedings before the commission. Yet it is to be presumed
that such intervention is contemplated in proper cases
affecting the interests of persons not formal parties to such
proceedings, inasmuch as the commission has made pro-
vision for such intervention.

On page 1451 of the Code, we find the following rule pro-
mulgated by the commission: "Persons or carriers not
original parties, may apply in any pending case, or proceed-
ing, for leave to intervene, and to be heard upon the ques-
tions involved. Such application must be made by petition,"
etc.

If persons holding the interests of the petitioners in the case in judgment, and seeking to raise a fundamental question of law, are not entitled to intervene, who are the persons in interest entitled to intervention in such cases, or proceedings, and how is that right of intervention derived? If minority members, though holding interests, are not required to be made parties by the applicants, and cannot on *any ground* become parties by intervention, and no others are afforded the right of intervention, the section is apparently meaningless, when it couples parties in interest with applicants. In all cases in which there is an applicant, this section affords an appeal to such applicant. The words "party in interest," or "person in interest," evidently include all persons, other than applicants, who are interested in the matter to which the application relates. The petitioners occupy that relation to the merger proceedings. To such persons the section gives an appeal from the order, or decision, of the commission. But it must appear that the persons seeking to intervene have an interest which entitles them to be heard.

[10] Respondents assert that in the matter of the merger of the clubs in question, the commission proceeded ministerially, and hence there was no appeal; but this is not a fundamental objection. An appeal may be given either in a ministerial proceeding, or where the action is judicial. It is purely a question of intent, to be derived from the language of the General Assembly; nor is it at all clear that the commission was in all respects acting ministerially in the merger proceedings. If the right of the two clubs to merge is predicated, it may be conceded that in determining whether the clubs had taken the preliminary steps prescribed as a condition precedent to merger, the commission discharged a ministerial function. But, in the instant case, the commission ruled on other questions. The precise matter raised by the petitioners in their petition of intervention,.

namely that the clubs in question were without authority of law to merge, was taken up, considered at length, and passed on by the commission, as appears from its opinion. The commission was in doubt on this point. We quote from the opinion: "At first we were doubtful whether the statutes plainly authorized the merger of a non-stock corporation in the same manner as stock corporations, under the provisions of certain sections of the Code hereafter alluded to, but we have reached the conclusion that this authority is manifestly conferred."

It is clear that if the statutes do not plainly authorize the merger of non-stock corporations, the commission was without jurisdiction to consider the application submitted. Hence, it was necessary for the commission to decide this question of jurisdiction. It was a preliminary and fundamental question. As stated, *supra,* it is far from clear that the decision of this question was a ministerial and not a judicial act, but it is not necessary to pass on that point.

There is one case in which it clearly appears that an appeal was taken, *nemine objiciente,* from a ministerial action of the commission. This is the case of *Jeffries* v. *Commonwealth,* 121 Va. 425, 93 S. E. 701. In this case it appears that the stockholders of the Tidewater and Western Railroad Company took steps under section 3810 relating to voluntary dissolutions of corporations, to effect a dissolution. The matter in due course was submitted to the commission, and the application was denied. Various persons claiming to be interested in, and affected by, the proposed dissolution, asked leave to intervene, but the petition of these would-be interveners was rejected. An appeal was taken to this court by the stockholders. In its opinion disposing of the case, the court distinctly announces that the action of the commission, denying the application, was ministerial. Hence, this was a case of an appeal from a ministerial action. Respondent says that the question of the right of

appeal was not raised. This is true, but there were many able counsel of record in that case, representing interests that were opposing the prayer of the applicants. An objection to the jurisdiction of the court to consider the appeal, if well taken and sustained, would have delayed at least the dissolution of the corporation. It was to the interest of the parties in opposition to postpone to as late a date as possible the day of such dissolution, and to the extent of that postponement thereby secure the continued operation of the Tidewater and Western railroad. In view of this interest, it is significant that the question of jurisdiction was not raised, and the omission strikingly suggests the thought that in the opinion of the array of learned and able counsel concerned, the point, if made, would not have been well taken.

Section 3810 provides for the dissolution of corporations. Sections 3821 *et seq.* provide for the merger of corporations. Section 3833 of the title containing these sections, provides for appeals from "any order or decision" of the commission. These appeals are to be at the instance of the "applicant, or any party in interest." The corporations concerned in merger, or dissolution proceedings, are certainly applicants and therefore apparently entitled to appeal. Who are the parties in interest, or persons in interest, contemplated in this immediate connection, and if the applicants can appeal from an order refusing merger, would not that appeal be taken from a ministerial action of the commission?

[11] A further ground of objection to the appeal, raised by respondent, is that petitioners were not precluded by the order of the commission refusing them leave to become parties, from instituting other proceedings. Hence, such order not being a final order, was not appealable. In that connection reference is made to *Ex parte Cutting,* 94 U. S.

14, 24 L. Ed. 49, the Supreme Court holding in that case, with respect to would-be interveners, as follows:

(a) "That they could not appeal as parties to the suit, because they had never been admitted as parties;" and

(b) "That they could not appeal from the order denying the motion to intervene, because that was not such a proceeding as gave them the right of appeal, that being only a motion in the cause."

With respect to this contention that the order rejecting the interveners was not final and therefore not appealable, it suffices to say that section 3833 affording an appeal from "any order or decision of the commission," does not use the word "final," and that this court has held in *Jeter* v. *Board*, 27 Gratt. (68 Va.) 918, that there might be an appeal of right from an interlocutory order in a controversy concerning a roadway. Moreover, the order rejecting the application of the petitioners to intervene in the pending proceeding, and excluding them entirely from participation therein, was certainly, as to them, a final order. Said the court in the case, *supra*: "There may be an appeal of right from such an order. Neither in the first, nor in the second, section of chapter 178 of the Code, page 1136, is it required that the order in a controversy concerning a roadway shall be final, in order that a person may appeal therefrom." The court gives effect to the words "any order" in the statute. The same words are found in section 3833—"An appeal shall lie from 'any order or decision of the State Corporation Commission to, etc., at the instance of the applicant, or any party in interest.' "

[12] Upon the whole, it is considered that the petitioners were not only persons in interest, but were entitled to be heard upon the basic question which they sought to raise, and to appeal from the order of the commission rejecting their application to become parties to the proceeding. The conclusion reached is not only plainly to be derived from

the statutes cited, and the precedent in 84 Va., *supra,* but is in accord with sound general principles. Petitioners' interest in the merger proceedings was direct and vital, and their contention that these proceedings were without warrant of law was fundamental. As Judge Cooley says, in his book on Taxation, pp. 255-6:. "It has often been very pointedly and emphatically declared that it is contrary to the very first principles of justice that one should be condemned unheard."

Having disposed of the first phase of the instant case, we will now take up the appeal on its merits.

The governing boards of the clubs in question proceeded under the merger statutes of Virginia (sections 3821 and 3822 of the Code). They entered into an agreement of merger, which having been duly executed by the said boards, respectively, was presented to meetings of the membership of the clubs called to consider same. This agreement was approved by substantially the unanimous vote of the voting membership of the Commonwealth Club, and by more than a majority of the membership of the Westmoreland Club. The agreement so executed, with the appropriate certificates, was thereupon presented to the Corporation Commission, which under the law is required in such a case "to ascertain and declare whether the applicants have, by complying with the requirements of the law, entitled themselves to the merger, or consolidation, applied for, and to issue or refuse a certificate thereof accordingly." Upon consideration of the papers submitted, the commission concluded that the Commonwealth Club and the Westmoreland Club were authorized to merge under the statutes, and having complied with sections 3821 and 3822 of the Code were entitled to a certificate of merger, which was accordingly issued.

Section 3821, in part, is as follows: "When merger or consolidation may be effected—Except as any merger, or

consolidation is prohibited by subsection (e) of section 3857, and subsection (e) of section 3866, any corporation organized, or to be organized, under any law or laws of this State may merge, or consolidate, into a single corporation with any other corporation organized for the purpose of carrying on the same, or a similar, business under the laws of this or any other State of the United States, or under the laws of the United States, which said consolidated corporation shall ＊ ＊ ＊," etc.

[13-14] This section is spoken of as if it were a general statute of the most comprehensive character, applying to all corporations existing, or to be organized, under the laws of this State. But such is not the case. A large number of corporations are expressly excepted, and the only corporations allowed to merge are those comprehended by the following words: "Any corporation organized" etc., "may merge or consolidate with *any other* corporation *organized* for the purpose of carrying on the *same* or a *similar business* under the laws of this or any other State of the United States," etc. (Italics supplied.) It is contended on the part of the appellee that the word "business" is not to be construed according to its ordinary meaning, and common acceptation, but as comprehending the activities and purposes of a non-stock social club. There are certain rules of statutory construction that it will not be amiss to cite in this connection. These rules have been variously stated.

The following citation is taken from the comparatively recent case of *Posey* v. *Commonwealth*, 123 Va. 551-3, 96 S. E. 771: "It is one of the fundamental rules for the construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute, taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in some

other sense. If the intention of the legislature can be thus discovered, it is not permissible to add to, or subtract from, the words used in the statute."

Another statement of the rule is: "The proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." *United States* v. *Winn,* 3 Sumner 209, Fed. Cas. No. 16, 740.

And in general it may be said that: "The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers, and when the intention is ascertained, it must always govern." 26 Am & Eng. Ency. L., 597.

Appellants insist that the plain meaning of the words used in the section cited, fortified and aided by the immediate context, and the provisions of other sections of the corporation laws, excludes social clubs from the operation of the merger statutes. On the other hand appellee maintains that upon a comprehensive view of the entire body of the corporation laws, "an outstanding and controlling principle will be perceived to put all corporations on the same basis and under the same general laws, except to the extent that limitations might be necessary to particular classes of corporations."

In this view, words that otherwise would indicate a special and different intent must be so construed—that is to say, given such a meaning—that they will be brought into harmony with the controlling principle. Of course, it is true that *given* a manifest controlling intent, particular words may by construction be impressed with a meaning that will be in harmony with that intent. But on the other hand the section, or sections, to be construed may so clearly express a special intent with respect to the subject matter,

that that intent must be made effective, and the words used will not be bent and distorted from their ordinary meaning and common acceptation. After all, the intent of the legislature is not to be derived by intuition, or any process of divination, but from the words used; and as is said in *Saville* v. *Virginia Ry. & Power Co.,* 114 Va., 444, 452, 76 S. E. 954, 957: "It is our duty to take the words which the legislature has seen fit to employ, and give them their usual and ordinary signification, and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution."

[15-17] The word "business," as a general proposition, refers to the occupation of conducting trade, or monetary transactions of any kind, though it is sometimes used in a wider sense. Primarily, and as ordinarily understood, a social club is not a commercial organization, since it is not organized for profit. Hence, the word "business" and the words "social club" must be construed out of their ordinary meanings and common acceptation, if the merger statutes are held to comprehend social clubs within their intendment. It is, of course, conceded that this intendment may be imputed to the statute, if it sufficiently appears on the whole, in view of the rules of construction heretofore noted, that such was clearly the legislative intent. But if the context, so far from imputing a meaning to a single word, or a collection of words, that is foreign to the ordinary acceptation, is in harmony with that acceptation, it is difficult for the courts to say that the General Assembly plainly intended to use such words in an extraordinary and unusual sense. (It appears to be conceded that express statutory authority is required for the merger of corporations. Evidently the Corporation Commission considered that it must find in the statutes a plain authorization of merger as a foundation for its action upon the application in the case in judgment, as will appear from the following extract

from its opinion: "At first we were doubtful whether the statutes plainly authorized the merger of a non-stock corporation in the same manner as stock corporations, under the provisions of certain sections of the Code hereafter alluded to, but we have reached the conclusion that this authority is manifestly afforded." But whether this proposition that the right to merge must be plainly afforded by law is or is not conceded, it is abundantly sustained by authority.

"It is undoubtedly true that where constitutional or legislative authority for a consolidation or merger is asserted, such authority will not be implied, but must be clearly, distinctly and expressly conferred. For instance, a statute which provides that in case of the consolidation of corporations, the consolidated corporation shall not be liable for the debts of the original companies, does not itself authorize consolidations, but applies merely to consolidations otherwise authorized." Fletcher Cyc. Corp., Vol. 7, p. 8317.

"It is well settled that the power of corporations to consolidate and merge is not to be implied, and exists only by virtue of plain legislative enactment." 1 Thomp. Corp. sec. 315; 7 Thomp. Corp., sec. 8216.

In the case of *Knapp* v. *Golden Cross*, 121 Tenn. 233, 118 S. W. 390, which deals with the attempted merger of two non-stock companies, we find the following: "The consolidation of corporations is not within the object of a corporation in the absence of provisions therefor, and cannot be implied. It is well settled therefore, that corporations cannot lawfully consolidate, however desirable and beneficial consolidation may be, unless the State has expressly authorized them to do so." In this connection, the court, *supra*, cites Clark & Marshall on Corporations, Vol. 2, sec. 348.

"All statutes under which corporate power is asserted must be construed against the grant of power." *Knapp* v. *Golden Cross, supra*, 121 Tenn. 213, 118 S. W. 390. "Corpo-

rations have no general power to consolidate or merge with another corporation, unless the express power to do so is found in their charters, or in the statutes of the State which created them." 121 Tenn. 214, 118 S. W. 390. "The right of consolidation cannot be implied." 121 Tenn. 233, 118 S. W. 396.

Recurring to the discussion of the meaning of the word "business," and of the words "social clubs," we cite the following:

In Corpus Juris, p. 1103, it is said: "The word is also used with various shades of meaning, as with reference to mercantile or commercial activities, or to commercial, or industrial enterprises, or as synonymous with trade." Various cases are cited in this connection, among others, *Easterbrook* v. *Hebrew Ladies Orphans Soc.,* 85 Conn. 289, 299, 82 Atl. 561, 563, where the court, construing a covenant against the use of a lot for business purposes, says *(Id.* 299) : "The word 'business' in its ordinary and common use among men, is employed to designate human efforts which have for their end living, or reward. It is not commonly used as descriptive of charitable, religious, educational, or social, agencies. Can it be imagined readily that any one of these would have referred to a charitable institution, or a church building, or adjunct, or a social club, as a business? We imagine not, and it is no less improbable that they employed that term in the instrument in question in the permissible broad sense which would include such activities." For same case, see 41 L. R. A. (N. S.), pp. 615-621.

Another case is that of *Cuzner* v. *California Club,* 155 Cal. 303, 100 Pac. 868, 20 L. R. A. (N. S.), p. 1099. "The term 'business,' as used in a law imposing a license tax on business trades, professions and callings, ordinarily means a business in the trade, or commercial sense, one carried on with a view to a livelihood, or profit. A *bona fide* social club, if permitted by its articles of incorporation, or association,

may of course so engage in business, either by transactions
with its members or members of the public; as for instance
by letting for consideration rooms not used for the ordinary
purposes of the club-house, or by engaging in some outside
enterprises for the purpose of realizing profits to be devoted
to club purposes; and so far as it does such things, even in-
cidentally, for the purpose of realizing profits, to be devoted
solely to club purposes, it would be engaged in business in
the commercial sense, as fully as any person could be. But
in its transactions with its members, in the carrying on of
the club-house, etc., it is not engaged in business at all
in the trade, or commercial, sense, as ordinarily under-
stood."

Reviewing this case, appellee contends that under its au-
thority certain activities of the Westmoreland Club are "in
every sense of the word engaging in a commercial enter-
prise, and though it is incidental to the general purposes of
the club, it is business in the common acceptance of that
term." These activities on the part of the Westmoreland
Club are alleged to be, renting rooms to members of the
club, or to persons introduced as guests, and running restau-
rants, both for ladies and gentlemen, at which not only
members of the club, but any person invited by a member
may purchase meals, a bar for the sale of soft drinks, cigars,
tobacco, cigarettes, etc. In all these lines of business, it sells
its supplies at a profit. It is, therefore, engaged in conduct-
ing these enterprises for the profit of the club.

It is true that a social club may conduct the foregoing
enterprises incidentally, and as such they are "business,"
as commonly understood, but that fact does not make a
social club, operated distinctively as such, a business cor-
poration. If so, we imagine all social clubs would be fairly
denominated business enterprises in the ordinary accep-
tation, but such we have seen is not the case. The West-
moreland Club was not incorporated as a purveyor of

amusements, or to conduct commercial enterprises for profit. It was organized "for the promotion of social intercourse, and for the purpose of maintaining a library and reading room." What is meant by social intercourse in this connection is stated in amplified form in the charter cited in *Hanger* v. *Commonwealth*, 107 Va. 872, 60 S. E. 67:

"The purposes for which plaintiff in error was organized, as shown by its certificate of incorporation, are as follows: 'Social fellowship and companionship among its members, promoted by intercourse and contact with each other, and to this end to furnish a place where meetings may be held, where questions of the day may be discussed, and innocent amusements engaged in.'" This charter expressly gave this club the right to furnish at any and all times to its members for pay, diet, refreshments of any kind, cigars, soft drinks, etc. The court said in this connection: "The functions of social clubs authorized to be created by the statute, *supra,* manifestly are intended to be purely social, otherwise it would have been needless to enact chapter 4 of the act, *supra,* separate and in addition to chapter 1 of the same act, which provides for the incorporation of stock companies for general business purposes. Every purpose declared, and every right and privilege conferred by the charter was conferred on members of the club; therefore, it was clearly intended to be a social club, and not a business corporation."

See also *In re St. James Club,* 13 Eng. Law & Eq. Rep. 589, distinguishing between business corporations and social clubs.

In *Livingston's Sportsmen's Association,* 2 N. Y. Supp. 63-4 the court construing a statute concerning the winding up of corporations held that a social club was not a business corporation.

But if these incidental activities render the social clubs, in which such activities exist, corporations formed for the purpose of conducting such enterprises, and therefore busi-

48

ness corporations, the question may well be asked why in the case of *Piedmont Club* v. *Commonwealth,* 87 Va. 540, 12 S. E. 963, the Piedmont Club was not considered to be in the business of selling liquor, and therefore required to take out a license? The Piedmont Club was such a social club as the Westmoreland Club, and was engaged in dispensing liquors to and at the expense of its members. The statute of that date (Laws 1889-90C, 244) provided that, "No person, corporation, association, etc., shall, within the limits of this State, sell, or offer to sell, ardent spirits," etc. Further that "Any person, club, corporation, etc., desiring to carry on the business of a retail liquor merchant, and also that of a bar-room, shall obtain a separate license for each." The court held (87 Va. 543, 12 S. E. 965), that: "The defendant club, in dispensing liquors to or at the expense of its members, was not engaged in the business of selling liquor and a liquor license is required of those persons only who sell, or offer to sell, liquor as a business."

According to *Cuznor* v. *California Club, supra,* a social club, if permitted by its articles of incorporation, may engage in business, and when it sells supplies at a profit to its members, the proceeds to be devoted to club purposes, it engages fully in business in the commercial sense. In this respect, the conclusions of this case are at variance with the conclusions announced in *Piedmont Club* v. *Commonwealth , supra.*

There is also cited in Corpus Juris, p. 1102, as against the many other cases defining "business" in its ordinary acceptation, a case from 9 Blatchford 390-397 (*In re Alabama, etc., R. Co.,* Fed. Cas. No. 124), giving very wide significance to the word "business." The following is taken from that case: "In its broadest sense, the term 'business' includes nearly all the affairs in which either an individual, or a corporation can be actors. Indulgence in pleasure, participation in domestic enjoyment, and engagement in

the offices of merely personal religion, may be exceptions in the case of an individual. But the employment of means to secure, or provide for, these would, as to him, be business; and to a corporation these exceptions can have no application. The conduct of any and all of the affairs of a corporation is business." In view of this case, there is apparently no distinction between the ordinary business corporation and an incorporated social club. All incorporated social clubs by its terms would be business corporations. However, the general trend of judicial findings is to the effect that corporations for social purposes, or for the general welfare of society, are not business corporations, and, therefore, as a general proposition, are not in the legislative mind when statutes are enacted and directed against business corporations.

One main contention of the appellee is, that "section 3821 is, by its terms, made applicable to all corporations organized, or to be organized, under any law or laws of this State, and this includes corporations of every character. The reference to similar business is merely for the purpose of fixing the classes of corporations which may exercise the powers granted by the statute." That is to say, that in this contention the words used in section 3821 really mean that every corporation organized, etc., may merge, etc.—in other words, shall have the right of merger—but business corporations must merge with other business corporations organized for the same, or similar, business, and non-stock corporations must merge with non-stock corporations of a like, or similar, nature or purpose. But do the words of the statute plainly convey the suggested intent, either first, standing alone, second, in view of the immediate context, or third, in the wider view to be derived from consideration of other sections of the general law dealing with corporations?

First, as to the corporations that may merge: The section does not give to every corporation the power to merge, as a primary grant or gift of authority, but by its very terms it limits, in effect, the right to merge to those corporations which can find other corporations organized, not for a *like* or *similar purpose,* which would be words of wide significance, but for the purpose of carrying on the *same* or *similar business.* (Italics supplied.) Is there anything in the language cited to plainly signify that the word "business" was used in this connection, not in its ordinary acceptation, but as the equivalent of "objects," or "purposes"?

Second. Section 3822 may be said to be the immediate context of the words to be construed in the preceding section. This succeeding section prescribes how the consolidation, or merger, authorized by section 3821 shall be proceeded with, and made effective. If this section is to aid the contention that the words, "the same or similar business," comprehend stockholding and non-stockholding corporations alike, and are really the equivalent of "the same or similar purposes," one would expect to find in said section some word, or words, or expressions, appropriate to non-stock corporations. Such words are noticeably lacking. Most of the descriptive words actually used can be applied to non-stockholding corporations only by a *tour de force.* It is provided by this section that the boards of directors (these words might apply either to a stockholding or non-stockholding corporation) of the corporations proposing to merge shall enter into an agreement. The detailed contents prescribed for this agreement are very numerous. Among other things, the agreement must contain the amount of the bonds, if any, the number of shares of capital stock (the words "if any" omitted), with the par value of each share proposed to be issued by the consolidated corporation, and further explicit details as to such stock. The certificate

of incorporation of non-stock organizations very naturally contains no reference to capital stock, but the certificate of corporations formed under chapter 148 contains a provision with respect to capital stock, substantially the same as that prescribed to be set out in the agreement of merger. Section 3822 evidently contemplates that in some cases of merger there would be no bonds, since the language relating to bonds adds the words, "if any," but apparently it does not contemplate any merger without capital stock and shares, since the words "if any" do not follow the word "stock." This omission in this connection carries some significance. The agreement is to be submitted to the *stockholders* of the merging, or consolidating, corporations at a meeting to be called for the purpose. If non-stockholding corporations had been in contemplation, it would seem that the words, "or members," would have followed the word "stockholders." Further, a notice is to be mailed to the "last postoffice address of each of the *stockholders* of record." There are of course no stockholders of record, or otherwise, in non-stockholding corporations. The vote at the meeting is to be by ballot, each share of *stock* entitling the holder to a vote. When the merger is complete, the merged corporation may carry on the *business* for which it was formed, not the objects or purposes for which it was formed. Provision is made for a dissatisfied *stockholder* to secure from the merged, or consolidated, corporation the fair cash value of his *stock*, and upon the payment of the ascertained or agreed value, the *stockholder* is to deliver up his certificate of *stock*, if any has been issued, and if none has been issued he is to make a due assignment to the merged corporation of his rights in respect thereto, and thereafter the corporation may reissue the same amount of *stock* to any other person, or persons. (Italics supplied.)

There are no words in this section that have to be disregarded, or to be construed out of their ordinary meaning,

to make the section apply to stockholding corporations. They are apt and appropriate to the merging of such corporations, and provide for every detail. "Stock" is to be issued, "stockholders" are to be notified, dissatisfied "stockholders" are provided for, "certificates of stock" are to be delivered up, assignments of rights are to be made; but these assignments refer to stock, for in such cases, in lieu thereof, the merged corporation may issue the same amount of *stock* to other persons. Each "share of stock" entitles the holder to a vote. It is of course recognized that this section, *mutatis mutandis*, could be made to apply to non-stock companies, either by a direct legislative provision to that effect, or by necessary implication, which is always the equivalent in compelling force of a direct provision. But if, as this court said in *Scott* v. *Doughty*, 124 Va. 366, 97 S. E. 802, "ordinary words are to be given their plain, ordinary meaning in the construction of statutes, unless a different intent is in some way manifest, what indication does this section afford that the word "stockholder" is to be construed to mean member, or to include member, when the words repeatedly and continuously used are "stock" and "stockholders"? The General Assembly was fully competent to make its meaning clear, and by appropriate language, if it was so minded, to direct the application of this statute to a purpose not apparently intended by the words actually used.

For instance, section 3810 relates to the dissolution of corporations. Omit one sentence in this section and the same difficulty of construction that arises in the case in judgment would be confronted in the interpretation of said section. In its terms it apparently relates to stock companies only, but the larger legislative intent is made clear by the following saving clause: "In the case of a corporation having no capital stock, the directors, managers, trustees, or other governing board, shall take the

action hereinbefore required of the board of directors, and the members of the corporation such action as is hereinbefore required of the stockholders." The omission of a like provision in section 3822 is significant. We conclude, therefore, that the immediate context of section 3821 does not enable us to say that this section affords clear, distinct and express authority for the merging, or consolidation of non-stock corporations. There are, however, other sections of the Code cited and relied upon to support the conclusion that upon the whole this "authority is manifestly conferred."

Third. Section 3776 is cited by appellee, as well as by the commission. This section is in chapter 147, which contains the general provisions relating to corporations, and is as follows:

"The provisions of this chapter, except where otherwise expressly provided, shall be construed to apply to all corporations of this State, organized or to be organized, for any lawful purpose for which a corporation may be created, but shall not be construed to enlarge the powers of corporations chartered under chapter one hundred and fifty-one."

The chapter referred to relates to the formation of non-stock companies. Appellants seek to derive an argument against the merger of the clubs in question from the comcluding sentence of the section, *supra*. But, as appellee justly observes in reply, this proviso applies in terms to corporations chartered under chapter 151, and neither the Commonwealth nor the Westmoreland Club was chartered under that chapter. The words, "the provisions of this chapter, except where otherwise expressly provided, shall be construed to apply to all corporations of this State organized, or to be organized," etc., are relied upon to indicate the clear intent of the General Assembly that non-stockholding and stockholding companies shall alike enjoy the authority to merge, or consolidate, pursuant to sections

3821 and 3822. Section 3776 does not mean solely that any particular provision, or provisions, of chapter 147 will attach to a given corporation unless such application is excluded by express words. It means that and something else. It means that these provisions will attach, or apply, to all corporations unless expressly excluded in words, or unless the character and terms of the provision itself sufficiently indicate that it is not intended to attach or apply to a given corporation, or class of corporations.

There are many sections in chapter 147 that obviously are intended exclusively for stock corporations. They do not apply to non-stock corporations, and will not be construed to apply to them, though it is nowhere expressly provided that they shall not apply. The inherent evidence that they are not intended to attach to such corporations is sufficient. Take for instance section 3792, which provides that "every corporation shall have power to create two or more kinds of stock of such classes," etc. Obviously, this section does not apply to social clubs, though it is "not otherwise expressly provided." Or take 3793, providing that "every stockholder shall be entitled to a certificate," etc.; or section 3788, providing that "subscriptions to the capital stock of *any* corporation may be paid," etc.; or section 3828 relating to railroad corporations; or section 3801, relating to the right to vote, as between pledger and pledgee of capital stock; or section 3785, providing that *any* incorporator may assign his interest and rights in, and rights in respect to, *any* charter granted under the laws of this State, and such assignee and those holding under him shall thereupon be subrogated to all the rights and interests therein of such incorporator. Plainly, the provisions of these sections are exclusively intended for stock corporations. The language of section 3785 is very broad. There is no mention of stock, but a sweeping provision that *any* incorporator may assign his *interest in,* and *rights in respect to, any*

*charter* granted under the laws of this State, and his assignee shall be subrogated to all the rights and interests of the incorporator. Could a member of the Westmoreland Club proceed under this section to assign his interest in, and rights in respect to, the charter of the club; and, if so, what would his assignee take by the assignment?

Section 3776 obviously means that the provisions of chapter 147 shall apply to all corporations organized, etc., unless it plainly appears that they are not applicable, or they are expressly excluded from such application.

This causes us to return to sections 3821 and 3822, and ask again the question, whether these sections are not obviously inapplicable to non-stock corporations. Moreover, if these sections had been intended to apply to social clubs, that intent could have been so readily, easily and plainly indicated by the General Assembly in any one of a number of ways.

Section 3874, in chapter 151, is also cited by appellee, in aid of the contention that the right to merge is plainly afforded by the statutes to non-stock corporations. The language particularly relied upon is the following: "In addition, such corporations (*i. e.,* non-stock corporations) shall exercise any corporate powers necessary to the purposes above enumerated and given" (this has no reference to merger), "and shall have all the general powers, etc., conferred, etc., by the general laws of this State applicable thereto" (*i. e.,* to non-stock corporations). But this grant of general powers is limited by the words "applicable thereto," so that the difficulty of applying the merger section to non-stock companies is not removed. The same inquiry recurs: Are the provisions of the sections applicable in their ordinary and apparent meaning to non-stock corporations? Must this court, in order to merge social clubs, adapt inapt words by a process analogous to the rough and ready

method employed to fit his victims to Procrustes' famous bed?

Section 3879 is also cited by the commission and the appellee, but the power given to the managers, etc., of a non-stock corporation by this section is limited to a single situation—that is to say, if there be no members having the voting power under the charter, or by-laws (a situation that does not exist in the case in judgment), the trustees, managers, etc., of a non-stock company are empowered to take any action which might be taken by members having such voting powers, or by stockholders and directors under any section of this chapter, or by both. A large grant of power is conferred upon the *managers* in the precise situation indicated, but the section is far from saying that the members either generally, or with reference to an indicated situation, may take any lawful action on behalf of a non-stock company that might be taken by stockholders under any section of the chapter (*i. e.,* act). If such a provision could be found, the difficulties of this case would be dissipated. We have sought in vain to find in the merger statutes the language, or the equivalent of the language, used in the dissolution section to indicate the legislative intent that the word "directors," in that connection, should include within its meaning the word "managers," and the word "stockholders" the word "members."

The case of *Knapp* v. *Golden Cross,* 121 Tenn. 212, 118 S. W. 390, dealt with a situation very much resembling that presented in the case in judgment. Two non-stock companies sought to merge under the Tennessee statute, which like the Virginia statute, apparently applied to stockholding corporations only. That statute, like ours, granted the right to merge to corporations conducting the same general business. The court, in an elaborate opinion construing the statute, held that it did not apply to non-stock corporations. Some of the reasons given and derived from the language of the act

were, that a statute conferring upon stock corporations the power to consolidate did not apply to fraternal beneficiary associations having neither stock nor stockholders—that the persons interested in such associations are styled members, not stockholders—that the "members have no stock, for none can be issued, and, therefore, none can be subscribed." 121 Tenn. 237, 118 S. W. 396. Further, as illustrating the inapplicability of the Tennessee statute to the merger of associations having neither stock nor stockholders, the court said: "The statute by its terms clearly contemplates corporations which have a capital stock and stockholders, and which may and do own property to be used and disposed of in carrying on and conducting some sort of business in which earnings may be made for the individual profit of the stockholders." 121 Tenn., p. 236, 118 S. W. 396. The application to merge was denied..

The Tennessee statute (Acts 1887C, 198) relied upon to justify merger in the foregoing case is in its sweeping terms and in some of the specific language used, so like the Virginia statute that the reasoning and conclusions of the Tennessee court in this connection are unusually apposite and persuasive. The statute, in part, is as follows: *"All corporations now or hereafter existing* under the laws of this State, whether incorporated under special or general laws of the State, shall have the power and they are hereby authorized and empowered to lease and dispose of their property and franchises, or any part thereof, to any corporation of this, or of any other State, engaged in, or carrying on, or authorized by its charter to carry on in this, or in any other State, the same *general business* as is authorized by the charter of any such lessor corporation, and said corporation shall," etc. 121 Tenn. 234, 118 S. W. 396. (Italics supplied.)

The following cases are cited by appellee to show that the word "member" is synonymous with "stockholder":

I. *Bank of Commerce* v. *Bank of Newport,* 63 Fed. 899.
11 C. C. A. 484. In that case it appears that the Arkansas
statute prescribed that certain stock corporations should
have a lien upon the stock of the members. The controversy
was whether as a matter of fact the firm of Jones Bros., in
consequence of certain transactions, was actually a member
of the Bank of Newport. If it was, then it was a stock-
holder, and the bank had the statutory lien. Held: That it
was a member, hence a stockholder.

II. *Clark* v. *Insurance Co.,* 130 Ind. 332, 335-6, 30 N. E.
212. This was an insurance case. The statute relating to in-
surance companies provided that when a member had a
claim on the corporation founded on a policy, assessments
should be made on the members to pay such claim. Held:
That the term "member" in the statute was synonymous
with policyholder, so far as it related to the payment of fire
losses.

III. *People* v. *Life Ins. Co.,* 78 N. Y. 114, 34 Am. Rep.
527 (a New York case). This too was an insurance case.
The statute provided that the company might sue any of its
"members," or "stockholders," and that any of the "mem-
bers or stockholders" might sue the company. The court
held that "The words 'members' and 'stockholders' here
mean the same person. Every member of such a company
is a stockholder, and every stockholder is a member."

IV. *Commonwealth* v. *Detwiler,* 131 Pa. 614, 118 Atl.
990-992, 7 L. R. A. 357, 360. This was a question of the con-
struction of the charter of an agricultural and mechanical
institute. The charter provided that the members should
severally subscribe at least one share of stock, and the ag-
gregate subscriptions should constitute the capital stock.
Said the court, construing the provision: "A member must
therefore be a stockholder, and the capital stock is made up
of the shares subscribed by the members. There is no pro-
vision in the charter which contemplates the possibility of

members who are not stockholders, or of stockholders who are not members."

V. *Curtis* v. *Harlow*, 53 Mass. (12 Metc.) 3. The question here was not whether members, as such, were stockholders —that does not seem to have been denied; but "whether persons who became stockholders after the date of a certain contract were as fully members in the matter of liability as the early associates." The court said: "We are brought back to the words of the statute, as the rule for our decision. Where the words are plain and unequivocal, we have only to give them effect, unless such construction is absurd, or do violence to common sense." Hence, the conclusion that the word "members" included all actual stockholders without reference to the time when they became such.

VI. *Carlton* v. *Southern Mutual, etc., Co.*, 72 Ga. 373. This was a case of a mutual insurance company. Necessarily, under its charter, the words "stockholder" and "member" were synonymous. The stockholders were members, the members were stockholders. "The venture," said the court, "was mutual between all the members."

VII. *Sugg* v. *Farmers.Mutual, etc., Co.* (Tenn. Ch. App.), 63 S. W. 226. This was a case, not from the Supreme Court of Tennessee, but from the Court of Chancery Appeals, and preceded the case of *Knapp* v. *Golden Cross, supra.* However, there is no conflict between the cases. Under the charter of the company, the words "stockholder" and "member," as in the Georgia case, were evidently synonymous. This conclusion is aided by the very words of the charter, in section 10. The court first states—and this is the general principle that we have announced—that, "When we use the term 'stockholders' we usually have in contemplation a stock subscription list." Proceeding, the court says: "Paragraph ten is useful as indicating the legislative idea of the meaning of the word 'stockholders.' That language is: 'Any company organized under the provisions of this act may restrict

its business to the insurance of the lives of its *members* **or** *stockholders* alone'." (Italics supplied.)

The foregoing decisions were plainly right, and the questions presented were without difficulty, but they are not helpful in the case in judgment, much less decisive of its disposition. The wording of the statute, or the charter, respectively, really left nothing for interpretation. Our difficulty is that the words of our statute are plain and unequivocal, and *per se* apparently deal with stockholders and stock companies exclusively. To hold that they apply to such companies only and do not comprehend non-stock companies is a construction that is "neither absurd, nor doing violence to common sense."

[18-19] Upon the whole, having in mind that the right of merger must be plainly given, we are unable to find that the authority to merge is thus afforded by our statutes to non-stock companies. There is a plain grant of such authority to corporations carrying on the same, or similar business. The procedure of consolidation is appropriate to stockholding corporations, thus strengthening the conclusion that the original authority to consolidate was intended for such corporations only. A general view of the statutes does not indicate, in any plain or express fashion, the intent that the merger statutes shall apply further than the apparent intendment of these sections indicates. It is our function to ascertain the intent of the General Assembly, and to enforce the law as it is written. It is not our duty, unless such action is clearly indicated either in the sections under immediate consideration, or upon a comprehensive view of the statutes *in pari materia,* to wrest language from its obvious and apparent meaning, and make it thereby conform to what is conceived to be the spirit of the act.

"The primary rule is that a statute is to receive that meaning which the ordinary reading of its language warrants, words not technical being taken in their ordinary,

familar acceptation, with regard to their general and popular use; and the meaning thus arrived at must be adopted when it involves no absurdity, if from a view of the whole law and other laws *in pari materia* no different legislative intent is apparent." 26 Am. & Eng. Ency. L. (2d ed.), p. 598.

We can afford the appellee no relief that does not rest upon the statutes, bearing in mind at all times that the right of merger upon which it insists must be clearly given. After full consideration of the statutes, and the application thereto of the tests prescribed by the accepted rules of statutory construction, we are unable to perceive that these statutes, fairly construed, include within their purview non-stock-holding corporations. To say that the right of merger must be plainly afforded is to say, in substance, that we must be fully convinced that it is afforded. In such a situation, to doubt is to deny.

For the reasons given, the order of the Corporation Commission complained of must be reversed.

*Reversed.*